**In re LUPFER BROTHERS, a Missouri General Partnership, Debtor.**

**Bankruptcy No. 90–50159–SJ–12–ABF.**

United States Bankruptcy Court, W.D. Missouri.

Oct. 30, 1990.

Donald E. Bucher, Gould & Moore, P.C., Kansas City, Mo., for debtor.

Frank Wendt, Slagle, Bernard & Gorman, P.C., Kansas City, Mo., for creditor.

ORDER DENYING CONFIRMATION
OF AMENDED CHAPTER 12 PLAN

ARTHUR B. FEDERMAN, Bankruptcy Judge.

Lupfer Brothers is a Missouri General Partnership which filed a Chapter 12 peti-

tion on or about May 1, 1990. The partners are two brothers, Frank and Billy Lupfer, and their wives. The debtor's Chapter 12 Amended Plan proposes to pay secured creditors the value of their collateral over an extended period of time, with interest, and to pay to unsecured creditors the disposable income received by the debtor in the 3–year period of the Amended Plan, as required by Section 1225(b)(1) of the Bankruptcy Code. (11 U.S.C. Section 1225) An Objection to Confirmation was filed by Citizens National Bank of Maryville, which is a secured creditor, and which also holds the largest unsecured claim. The Court finds that the Amended Plan does not propose to pay unsecured creditors at least the amount that would be paid to them in Chapter 7 liquidation (11 U.S.C. Section 1225(a)(4)), that it does not propose to pay Citizens National Bank the full value of its secured claim (11 U.S.C. Section 1225(a)(5)), that the evidence does not demonstrate that the debtor will be able to make all payments under and to comply with the Amended Plan, (11 U.S.C. Section 1225(a)(6)), and further finds that the Plan does not comply with Section 1225(a)(3) of the Code in that certain plan provisions are effectively forbidden by law. As a result, confirmation is denied.

Section 1225(a)(4) of the Bankruptcy Code requires a Chapter 12 Plan to provide as follows:

> (4) the value, as of the effective date of the Plan, of property to be distributed under the Plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7 of this title on such date;

This provision requires that the debtor, in the course of the plan period, pay to its unsecured creditors an amount equal to the present value of what they would receive if the debtor were liquidated as of the effective date of the Plan.

■ At present, Debtor's 1990 crops are ready to be or have already been harvested. Debtor argues that the value of crops planted since the filing of the Peti-

tion, but not yet harvested, should not be included in the liquidation analysis of debtor's assets. Unfortunately, however, for the debtor, the statute clearly states that the value must be determined as of the effective date of the plan, not as of the petition date. *Gribbons v. Federal Land Bank of Louisville,* 106 B.R. 113 (W.D.Ky. 1989); *In Re Bremer,* 104 B.R. 999 (Bkrtcy.W.D.Mo.1989); *But see, In Re Nielsen,* 86 B.R. 177 (Bkrtcy.E.D.Mo.1988). Therefore, the Court must determine the liquidation value of such crops as of the effective date of the Plan.

■ The evidence showed that the debtor has in the ground a corn crop which it is estimated will produce approximately 26,-190 bushels, and for which the current price is $2.10, less 10 cents for trucking. The evidence further showed that the debtor has in the ground a bean crop which it anticipates will produce approximately 21,-660 bushels, for which the current price is $5.70, less 10 cents for trucking. Thus, the total net value of the crop in the ground is $173,676.00. The primary expense to be paid out of such crop is a secured line of credit to Bethany Trust Company for this year's expenses, in the amount of $93,-000.00 plus interest.

The Plan does not specify an effective date pursuant to Section 1225(a)(4). However, such effective date would be no earlier than the date of the confirmation hearing, and no later than the date of the first payment under the plan, which is January 1, 1991. At all such times, the evidence shows that after payment to Bethany Trust, net crop proceeds of approximately $80,000 would remain. These proceeds would inure to the benefit of unsecured creditors in Chapter 7. Undoubtedly, in the event of a Chapter 7 liquidation prior to harvest, the trustee would incur expenses in hiring labor to do what the Lupfers will instead do in harvesting the crop. However, there was no evidence of the amount by which the crop proceeds would be reduced by such expense; there certainly would be substantial proceeds even after payments of those expenses. Yet the Plan does not propose to pay the value of such

proceeds to unsecured creditors. For that reason alone, the Amended Plan cannot be confirmed.

■ Section 1225(a)(5) states that with respect to each allowed secured claim, the Plan must provide that "the value, as the effective date of the Plan, of property to be distributed by the Trustee or the debtor under the Plan on account of such claim is not less than the allowed amount of such claim ..." (11 U.S.C. Section 1225(a)(5)(B)(ii)). The debtor's obligations to the bank, in the form of a loan secured by a lien in real estate, had matured and were due prior to the filing of the Petition. Yet the Amended Plan proposes to amortize the real estate loan over a period of 25 years, at an interest rate of 9¾%. The Court concludes that such an interest rate does not give the creditor the present value of its secured claim.

■ In *United States v. Doud*, 869 F.2d 1144 (8th Cir.1989), the Court first determined the interest rate for a riskless investment, such as Treasury Bills, for a term equal to the payout period proposed in the Plan, and then adjusted that rate upward by 2% to account for the additional risk associated with a Chapter 12 reorganization. The Lupfers argue that the appropriate rate for this analysis is the Federal Funds Rate, which is the rate used for reserves traded among commercial banks for overnight use in amounts of $1 million dollars or more, or the Discount Rate, which is the charge on loans to depository institutions by the New York Federal Reserve Bank. Both those rates, as of the date of the hearing were between 7 and 8%. (Wall Street Journal, October 22, 1990, page C–19) However, neither of these rates represents an appropriate riskless rate for a 25–year payout period. As of the date of the hearing, the rate for 25–year Treasury Bills was approximately 8.85%. That rate, of course, needs to be adjusted upward to account for the additional risk. Under the circumstances, the 2% upward adjustment used in *Doud* would appear to be appropriate, resulting in a confirmable interest rate of not less than 10.85%. Therefore, the 9¾% interest rate

proposed in the Amended Plan does not give the creditor the present value of its secured claim. Furthermore, a 25–year payout on a claim which is already due is so out of proportion to the pre-existing contract that it amounts to an unreasonable frustration of the expectations of the creditor. *Matter of Peterson*, 95 B.R. 663 (Bkrtcy.W.D.Mo.1988) (cases cited therein). For all these reasons, the Amended Plan does not comply with Section 1225(a)(5), and cannot be confirmed.

■ Section 1225(a)(6) requires the Court, as a condition of confirmation, to find that "the debtor will be able to make all payments under the Plan and to comply with the Plan." The Amended Plan contemplates a significant change in the debtor's farm operation, anticipating that the debtor will, three times each year, purchase, raise, and sell approximately 1,000 hogs. Such an operation requires substantial operating funds. Frank Lupfer testified that Bethany Trust Company has agreed to make available to the debtor a line of credit for the purchase of such hogs. However, no representative of Bethany Trust so testified, and no commitment letter from the bank was offered into evidence. Since such financing is critical to the anticipated change in operation, the Court cannot find that the debtor will be able to make all payments under the Amended Plan and to comply with the Amended Plan, based upon the evidence offered.

■ Finally, the Amended Plan purports to encompass certain real estate which is not owned by this debtor, and is therefore not entitled to the protection afforded by Chapter 12. In 1983 and 1984, Geraldine Lupfer, the mother of Frank and Billy, transferred to herself and her two sons, as joint tenants, two separate tracts of real estate. Prior to the filing of this case, the joint tenants gave Citizens National Bank a mortgage on one of those tracts as collateral to secure a loan to the debtor partnership. As to the other tract, upon which Geraldine Lupfer lives, the joint tenants gave a mortgage to Bethany Trust Company as security for another loan made to the

debtor partnership. Thus, although neither tract of land is owned by the debtor partnership, both are subject to the liens of partnership creditors as security for partnership debts. The Amended Plan proposes that the first tract be treated as an asset of the debtor partnership, and that Citizens National Bank be paid the value of such tract over time. Thus, even though none of the joint tenants have filed a bankruptcy petition, the Amended Plan would propose that this tract of land be afforded the benefits of the bankruptcy filing by the partnership. By contrast, as to the tract upon which Bethany Trust holds a lien, such tract is not treated under the Amended Plan and is assumed not to be an asset of the partnership. As a result, to the extent there is any equity in such tract, such equity would not have to be paid to creditors of the partnership. As justification for the differing treatment, Debtor argues that at some point the joint tenants agreed among themselves to treat the one tract as a partnership asset, but not the other.

The differing treatment for these two tracts is not justified. In fact, there is no basis for assuming that either of the tracts is an asset of the partnership. Even if title to real estate can be transferred without the recording of a deed, as debtor argues, any agreement to so transfer such real estate must be in writing to comply with the Statute of Frauds. R.S.Mo. Section 432.010. See, *Lucas v. Smith*, 383 S.W.2d 513 (Mo.1964). Section 1225(a)(3) of the Code provides that a Court can confirm a plan only if it "has been proposed in good faith and not by any means forbidden by law ..." The good faith requirement "is a catch-all provision that allows the Court to take an overall look at the use which the debtor has made of the Chapter 12 filing." 5 Collier on Bankruptcy Para 1225.02(3) (15th ed.). If the non-debtor joint tenants wish to have the benefits of the automatic stay and the provisions of Section 1225(a)(4), (a)(5) and (a)(6), they should file a bankruptcy proceeding personally and thereby subject all their assets to the supervision of the Court. Since the Amended Plan attempts to treat assets which are not in fact owned by the partnership debtor, it does not comply with Section 1225(a)(3) and cannot be confirmed.

For the above and foregoing reasons, confirmation of the Amended Plan proposed by the debtor is DENIED.