**In re Sharon Regina CAMPBELL, Debtor.**

**Bankruptcy No. 99–50075–1–13.**

United States Bankruptcy Court, W.D. Missouri, Western Division.

May 26, 1999.

Sharon Regina Campbell, debtor pro se.

## MEMORANDUM OPINION
## AND ORDER

JERRY VENTERS, Bankruptcy Judge.

Sharon Regina Campbell, the Debtor, filed a Chapter 13 bankruptcy petition *pro se* on February 5, 1999. She scheduled, as an asset of her bankruptcy estate, a 1995 Mazda Protege automobile with a value of $4,650.00. She listed Household Automotive Financial Corp. ("HAFC") as the lien holder on the automobile and stated that the amount of Household's claim was likewise $4,650.00. On March 15, 1999, HAFC filed a Motion for Relief pursuant to § 362(d) of the Bankruptcy Code and at the same time filed a Proof of Claim indicating that the total amount owed HAFC was $14,652.31. HAFC claimed that the Mazda had a value of $7,700.00, and therefore asserted that its claim was secured in the amount of $7,700.00 and unsecured in the amount of $6,952.31.

Subsequently, on March 26, 1999, the Debtor filed an Amended Chapter 13 Plan in which she stated that the value of the Mazda was $5,850.00 and in which she proposed that that debt be paid on a pro rata basis with another automobile debt on a 1994 Chrysler.

This matter comes before the Court at this time on the Motion for Relief filed by HAFC and the Debtor's Objection to the proof of claim filed by HAFC. A hearing was held on May 24, 1999. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) over which the Court has jurisdiction pursuant to 28 U.S.C. § § 1334(b), 157(a), and 157(b)(1). For the reasons discussed below, the Court will sustain the Debtor's objection to the claim of HAFC in part and will allow the claim as a secured claim in the amount of $6,745.00 and as an unsecured claim in the amount of $7,907.31. The Motion for Relief will be denied.

The following constitutes the Court's Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

The Debtor purchased the Mazda in November 1996 for $12,740.00. After fees and insurance charges were added, she financed $13,098.23 with HAFC at an interest rate of 21%. When the Debtor purchased the car, it had 25,395 miles on it. Now, however, the car has in excess of 130,000 miles on it, and the Debtor explains that the high mileage is due to the Debtor's frequent trips to Wisconsin to visit her children. The parties agree that $7,100.00 is the N.A.D.A. Official Used Car Guide (Blue Book) retail value of the car after deductions are made for the high mileage. HAFC argues that it is entitled to the Blue Book retail value of the Mazda because the Debtor intends to keep the vehicle. On the other hand, the Debtor argues that the value should be no more than $5,850.00, as set out in her Amended Plan, including $1,200.00 for a mechanical breakdown protection contract that she asserts was never canceled.[1]

The Debtor further argues that the value of the automobile should be reduced because the Debtor had to spend $1,127.00 to replace the engine in the car and, more recently, she had to spend $437.39 to repair the timing belt. In effect, the Debtor

---

1. It appears to be the Debtor's argument that she attempted to cancel the mechanical breakdown protection contract in December 1996, and that the contract cost was $1,200.00. She states that she recently learned that the contract was never canceled, so it was her intention to include the $1,200.00 in the Plan. No further evidence was offered by the Debtor with respect to the mechanical breakdown protection contract, and it does not appear that any payments were included in the HAFC financing for that contract. The Court's valuation of the automobile in this Order does not include any amount for the mechanical breakdown protection contract. Perhaps the Debtor would want to consider rejecting the mechanical breakdown contract and possibly obtaining a refund of a portion of the payments made.

argues that she should be allowed a "credit" on the value of the vehicle for these extraordinary repair and maintenance expenses.

■ In *Associates Commercial Corporation v. Rash,* —— U.S. ——, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997), the Supreme Court held that the value of property retained by a debtor in a reorganization proceeding is the cost that the debtor would incur to obtain a like asset for the same proposed use. The Supreme Court stated that a simple rule of valuation was needed in the interests of predictability and uniformity. The Court noted in a footnote that the replacement value standard leaves to the bankruptcy courts, as triers of fact, the determination of the best way of ascertaining replacement value on the basis of the evidence presented. "Whether replacement value is the equivalent of retail value, wholesale value, or some other value will depend on the type of debtor and the nature of the property." *Rash,* 117 S.Ct. at 1886–87, n. 6.

■ In *In re Renzelman,* 227 B.R. 740 (Bankr.W.D.Mo.1998), the Honorable Arthur B. Federman of this Court determined that the appropriate starting point in the valuation of an automobile retained by a reorganizing debtor should be the Blue Book retail value decreased by 5%. The Court assumed that, on average, Chapter 13 debtors would spend 5% less than Blue Book retail value if they were forced to replace their car. The Court emphasized that this would be the starting point of the valuation, and that if either the debtors or the secured creditor wished to present evidence as to a replacement value that varied from that starting point, they would be free to do so. The Court believes that the rule established by Judge Federman in *Renzelman* is a sensible and reasonable rule and should be followed in this case.

■ The Debtor argues that the value of the vehicle should be further reduced in this case because the Debtor spent $1,127.00 to replace the engine in the vehicle in December 1998 and has more recently, in April 1999, spent $437.39 to replace the timing belt. This evidence, it seems to the Court, cuts against the Debtor, not in her favor. It is at least arguable that these somewhat unusual repair expenses, particularly the engine replacement, were occasioned by the Debtor's very heavy use of the vehicle. It appears the Debtor has driven the vehicle more than 100,000 miles in less than 18 months. The secured creditor should not be required to bear the cost of such repairs by reducing the value of the vehicle for purposes of the Chapter 13 Plan. Moreover, the repairs made by the Debtor to the car should serve to maintain or perhaps even increase the value of the car, not decrease its value. Surely, an automobile with 130,000 miles on it would be more valuable with a new engine in it than with the original engine. Every automobile owner recognizes that regular repairs and maintenance are necessary to keep a vehicle operating as well as to help maintain the value of the vehicle. If the Debtor had not made the repairs she made to the Mazda, the value of the Mazda would more likely be in line with the value of $4,650.00 which the Debtor placed on it in her original Chapter 13 Plan, but at the same time the vehicle would not have been operable and therefore would not have been of any use to the Debtor.

Since neither party has offered any expert opinion as to the actual replacement value of the Mazda at this time, the Court believes that the appropriate measure of the value of the vehicle is the Blue Book retail value minus 5%, which is the rule adopted by the Court in *Renzelman.* Therefore, the Court finds that there should be a reduction of $355.00 from the Blue Book retail value of $7,100.00, resulting in a value of $6,745.00 for the vehicle. HAFC's claim will be allowed as secured in the amount of $6,745.00 and as unsecured in the amount of $7,907.31.

■ In its Motion for Relief, HAFC also argues that the Debtor's Plan does not

comply with 11 U.S.C. § 1325(a)(5)(B)(ii). That section provides that the Court shall confirm a plan if, with respect to each allowed secured claim, the value of the property to be distributed under the Plan on account of that claim is not less than the allowed amount of that claim. HAFC argues that the Debtor's Plan does not comply with this section because the Plan provides that the claim is to be repaid at a discount rate of interest applicable at the time of filing. HAFC argues that it is entitled to be paid its contract rate of 21% at least through the date of confirmation.

HAFC is correct that it is entitled to its contract rate of 21% through the date of confirmation. After confirmation, HAFC shall receive the local Chapter 13 rate of interest on its secured claim.

For the reasons stated above, it is

**ORDERED** that the Debtor's Objection to HAFC's Proof of Claim is sustained in part and the value of the Debtor's 1995 Mazda Protege automobile is found to be $6,745.00. HAFC's claim is allowed as a secured claim in the amount of $6,745.00 and as an unsecured claim in the amount of $7,907.31. It is

**FURTHER ORDERED** that HAFC shall be paid interest at the contract rate of 21% through the date of confirmation of the Chapter 13 Plan and shall be paid the local Chapter 13 rate on the secured portion of the claim after confirmation. It is

**FURTHER ORDERED** that HAFC's Motion for Relief be and is hereby denied in all other respects.

**SO ORDERED.**