**In re Robert F. EHRHARDT and Lisa Ehrhardt, Debtors.**

**Bankruptcy No. 99–40990.**

United States Bankruptcy Court, W.D. Missouri.

Sept. 23, 1999.

Sheryl Reynolds, Kansas City, MO, for HAFC.

Tracy L. Robinson, Kansas City, MO, for Debtors.

Richard V. Fink, Kansas City, MO, Chapter 13 Trustee.

## MEMORANDUM OPINION AND ORDER

FRANK W. KOGER, Chief Judge.

Household Automotive Finance Corporation ("HAFC") filed an Objection to the debtors' Chapter 13 Plan objecting to the debtors' proposed treatment of its claims against them. The debtors answered and the matter came to trial on August 2, 1999. After considering the evidence and plead-

ings by the parties, as well as the Court's own research, the Court hereby issues the following Findings of Fact and Conclusions of Law as required by Fed. R. Bankr.P. 7052.

HAFC financed the purchase of two vehicles owned by the debtors: a 1997 Pontiac Grand Am purchased by debtor Lisa Ehrhardt on January 26, 1998, and a 1996 Jeep Cherokee purchased by debtor Robert Ehrhardt on January 18, 1999. In relation to these loans, HAFC filed a claim in this bankruptcy case against Lisa Ehrhardt in the amount of $15,051.29 and a claim against Robert Ehrhardt in the amount of $18,602.85. When it filed the claims, HAFC asserted each of the claims was secured by a lien against the respective vehicle.

In their original Chapter 13 Plan, the debtors proposed to retain both vehicles and pay the value of the vehicles pursuant to 11 U.S.C. § 1325(a)(5)(i) and (ii), with any balance to be paid pro rata with the general unsecured class. The debtors valued the Grand Am at $11,325.00 and the Jeep Cherokee at $18,049.95 and proposed to pay the values pro rata at the interest rate provided in the Local Rules in this District.

HAFC objected to the Plan's treatment of both of its claims on four grounds: first, HAFC asserted that each vehicle was undervalued in the Plan; second, HAFC objected to the interest rate provided under the Plan because it proposed to pay the rate of interest pursuant to the Local Rules rather than the contract rate of interest; third, HAFC asserted the Plan was unclear as to whether HAFC was to be paid through the Plan or outside of the Plan, and since the debtors were delinquent on the payments, they should be required to make payments through the Plan; and finally, as to the claim regarding the Cherokee, HAFC asserted the Plan did not comply with § 1325(a)(3) in that it was not proposed in good faith. HAFC subsequently filed an Affidavit in Support of its Objection to the Chapter 13 Plan.

The debtors filed an Objection to HAFC's Proof of Claim, asserting that the fair market value of the Grand Am was only $11,325.00, rather than the $12,475.00 value asserted in the Proof of Claim. Following a hearing held June 7, 1999, the Court entered an Order fixing the value of the Grand Am at $11,325.00.

Subsequently, the Chapter 13 Trustee filed an Objection to HAFC's Proof of Claim and a Motion to Avoid Lien under § 547 regarding the Jeep Cherokee, asserting that the security interest in that vehicle had never been properly perfected and so it should be treated as a general unsecured claim under the Plan. After investigating the Trustee's allegations regarding the lien on the Cherokee, HAFC ultimately conceded that the security interest as to that vehicle had not been properly perfected and agreed to have its claim against Robert Ehrhardt regarding the Cherokee treated as unsecured and paid through the Chapter 13 Plan. Consequently, this Court entered Orders sustaining the Trustee's Objection to the Proof of Claim and avoiding the lien on that vehicle.

On August 9, the Trustee filed an Objection to Confirmation on the ground that since the Court had sustained the Trustee's objection to the claim and the lien had been avoided on the Cherokee, the Plan which proposed to pay the value of that claim violated § 1325(a)(4).

On August 16, the debtor filed an Amended Plan treating the claim relating to the Cherokee as a general unsecured debt. Hence, the Trustee has withdrawn his Objection to Confirmation. The claim relating to the Grand Am is treated the same under the Amended Plan as it was under the original Plan: namely, it is valued at $11,325.00 and is to be paid that value pro rata with an interest rate as provided under the Local Rules.

The only evidence or argument presented at the hearing on August 2, 1999, pertained to the issue of whether the interest

rate provided in the Amended Plan for the debt to HAFC is improper. If it is improper, then the Amended Plan cannot be confirmed. Because no mention was made by counsel at the hearing, all other issues appear to be resolved at this point.

Rule 3084–1.E of the Local Rules of Practice for the United States Bankruptcy Court for the Western District of Missouri, entitled "Chapter 13 Proofs of Claim; Objections to Claims," provides in relevant part:

E. **Interest on Secured Claims.** All filed and allowed secured claims will be paid interest unless the plan/plan summary **specifically** provides for "zero" interest.

1. Filed and allowed over secured claimants shall receive their contract rate of interest, if provided on or with the proof of claim, from the date of the petition up to the date of confirmation. From the date of confirmation forward, filed and allowed oversecured claimants shall receive the posted **"CHAPTER 13 RATE."** If the contract rate is not provided on the proof of claim, such a claimant will receive the posted **"CHAPTER 13 RATE"** from the date of the petition forward.

a. An oversecured claim is one in which the fair market value of the collateral exceeds the total amount of the claim.

2. Filed and allowed undersecured claimants and filed and allowed fully secured claimants shall receive the posted **"CHAPTER 13 RATE"** from the date of the petition forward on the secured portions of their claims.

a. A fully secured claim is one in which the fair market value of the collateral equals the total amount of the claim.

b. An undersecured claim is one in which the fair market value of the collateral is less than the total amount of the claim.

* * *.

4. The posted **"CHAPTER 13 RATE"** shall be determined by the standing Chapter 13 trustee for the Western District of Missouri semi-annually as follows:

a. July 1 to December 31: For cases with the initial plan filed between July 1 and December 31, the interest rate shall be the 30 year treasury bond rate as of June 1, plus 2% nominal interest rate per annum. . . .

b. January 1 to June 30: For cases with the initial plan filed between January 1 and June 30, the interest rate shall be the 30 year treasury bond rate as of December 1 of the preceding year, plus 2% nominal interest rate per annum. . . .

5. **THE POSTED "CHAPTER 13 RATE" IN EFFECT AT THE TIME OF THE FILING OF THE INITIAL PLAN SHALL REMAIN IN EFFECT THROUGHOUT THE ENTIRE LIFE OF THE CASE.**

(Emphasis in original). Thus, in the Western District of Missouri, if a creditor in a bankruptcy case has an oversecured claim, it will be entitled to interest at the contract rate for the period between filing of the petition and plan confirmation, and interest at the Chapter 13 Rate for the period following plan confirmation; if a creditor is undersecured or fully secured, as in the case at bar,[1] it will be entitled to the Chapter 13 rate of interest for the entire period following the filing of the petition.

The Chapter 13 Rate in effect for the debtors' Plan in this case is 7.04%. The contract rate of interest, on the other hand, is 14.95%. Because HAFC is undersecured on this claim, the debtor pro-

---

1. HAFC's Proof of Claim on this debt asserts a total amount of claim in the amount of $15,051.29, and the value of the collateral is $11,325.00, so HAFC is undersecured on this claim.

poses to pay HAFC's claim at the Chapter 13 Rate from the date of the filing of the petition pursuant to Local Rule 3084–1.E.2. HAFC asserts it is entitled to at least the contract rate of interest, regardless of the local rule.[2]

Although HAFC has not specifically so stated, the gist of its argument in this case is that Local Rule 3084.1.E, which purports to impose a rate of interest different than the contract rate of interest, is improper, at least on the facts of this case. The parties have not briefed or presented any in-depth legal argument on this issue, but since the thrust of HAFC's objection appears to question the propriety of our local rule and because it seems likely that this issue will be raised in similar cases in the future, the Court addresses the issue in detail *sua sponte*.

■ In a Chapter 13 cram-down, the debtor is permitted to retain property in which a creditor holds a security interest, even over creditor's objection, so long as two conditions are met: (i) the secured creditor must retain a continuing lien on the property; and (ii) the secured creditor must receive from the debtor "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim [which shall be] not less than the allowed amount of such claim." 11 U.S.C. § 1325(a)(5)(B)(i) and (ii). In other words, the creditor must be paid the present value of its allowed, secured claim, or the Plan cannot be confirmed over the creditor's objection. *See In re Lockard*, 234 B.R. 484, 494 (Bankr. W.D.Mo.1999). The purpose of these conditions is to place the secured creditor in an economic position equivalent to the one it would have occupied had it received its allowed secured amount immediately. *See* Lawrence P. King, 8 *Collier on Bankruptcy* ¶ 1325.06[3][b][iii][B] at 1325–35 (15th ed. rev., 1997). Thus, if the Plan proposes to pay the secured claim over time, it is

necessary that the Plan provide for interest at such a rate that will put the creditor into the same economic position that it would have been if it had been paid its claim immediately rather than over time.

Determining what that interest rate should be in cram down cases has not been an easy task for courts, however, and the courts have come up with many different methods or formulas for determining the appropriate interest rate in such cases. These methods go by various labels, including "the market rate approach," "the coerced loan approach," "the cost of funds approach, "the contract rate rebuttable presumption approach," and so on. *See generally* Keith M. Lundin, 2 *Chapter 13 Bankruptcy* ¶ 5.51 (Wiley 1994); 8 *Collier on Bankruptcy* ¶ 1325.06[3][b][iii][B]; David G. Epstein, *Don't Go and Do Something Rash About Cram Down Interest Rates*, 49 Ala. L.Rev. 435 (1998); Matthew Y. Harris, *Chapter 13 Cram Down Interest Rates: Another Day, Another Dollar—A Cry for Help in Ending the Quest for the Appropriate Rate*, 67 Miss. L.J. 567 (1997); *In re Galvao*, 183 B.R. 23 (Bankr.D.Mass. 1995) (outlining and criticizing various approaches, including the use of local rules setting rates); *In re Carson*, 227 B.R. 719 (Bankr.S.D.Ind.1998) (discussing various approaches); *Dominion Bank v. Cassell (In re Cassell)*, 119 B.R. 89 (W.D.Va.1990) (discussing various approaches). As one court has phrased it, "there is a wilderness of rules courts have waded through to determine the proper interest rate in prior cases." *In re Cassell*, 119 B.R. at 90.

■ The Eighth Circuit Court of Appeals has determined that the appropriate interest rate to be paid on a secured creditor's claim in Chapter 11, 12 or 13 cases is the prevailing market rate, which is to be determined on a case-by-case basis. *See In re Monnier Bros.*, 755 F.2d 1336 (8th Cir.1985) (Chapter 11); *United States v.*

---

**2.** Although HAFC only requests the contract rate in its pleadings, HAFC presented evidence at the hearing suggesting that it may be

entitled to interest at a rate even higher than the contract rate.

*Doud (In re Doud)*, 869 F.2d 1144 (8th Cir.1989) (Chapter 12); *United States v. Roso (In re Roso)*, 76 F.3d 179 (8th Cir. 1996) (Chapter 13). Specifically, the Eighth Circuit Court of Appeals has interpreted the language contained in §§ 1129(b)(2)(A)(i)(II),[3] 1225(a)(5)(B)(ii), and 1325(a)(5)(B)(ii)[4] to require that secured claims be "valued under the 'market rate' approach" and receive a " 'market rate' of interest." *In re Roso*, 76 F.3d at 180 (*quoting USDA v. Fisher (In re Fisher)*, 930 F.2d 1361, 1363 (8th Cir.1991) (Chapter 12)); *see also In re Monnier Bros.*, 755 F.2d 1336 (Chapter 11); *United States v. Neal Pharmacal Co.*, 789 F.2d 1283 (8th Cir.1986) (Chapter 11). Thus, in cram down situations in the Eighth Circuit, a bankruptcy court is required to determine what the market rate of interest is in a particular case. Although the Eighth Circuit has not specifically mandated a formula for determining the market interest rate in a particular case, a review of its decisions on the issue provides some guidance as to the kinds of considerations courts are to make in determining the market rate in a given case.

In *In re Monnier Bros.*, 755 F.2d 1336 (8th Cir.1985), the Eighth Circuit announced its decision that the "prevailing market rate" of interest should be used in Chapter 11 cases and held that an appropriate discount rate should compensate a creditor for the time value of its money and the risks to its principal. *Monnier*, 755 F.2d at 1339. According to the Court:

> The appropriate discount rate must be determined on the basis of the rate of interest which is reasonable in light of the risks involved. Thus, in determining the discount rate, the court must consider the prevailing market rate for a loan of a term equal to the payout period, with due consideration for the quality of the security and the risk of subsequent default.

*Id.* (*quoting* 5 *Collier on Bankruptcy* ¶ 1129, at 1129–65). The Eighth Circuit noted in *Monnier* that the treasury bill rate reflected one rate of return available on a short term, low risk investment. *Id.* Although the *Monnier* Court ultimately concluded that the contract rate of interest was appropriate under the facts of that case,[5] as one court has said, "its application was hardly a ringing endorsement" for the application of the contract interest rate in cases presenting different factual scenarios. *In re Wilmsmeyer*, 171 B.R. 61, 63 (Bankr.E.D.Mo.1994).

Then in *United States v. Neal Pharmacal Co.*, 789 F.2d 1283 (8th Cir.1986), the Eighth Circuit was called upon to deter-

---

**3.** Section 1129(b)(2)(A)(i)(II) provides that in order for a Chapter 11 Plan to be considered "fair and equitable with respect to a class," and therefore confirmable, with respect to a class of secured claims, the Plan must provide that the holders of such claims retain the liens securing such claims and:

> (II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property. . . .

11 U.S.C. § 1129(b)(2)(A)(i)(II).

**4.** Sections 1225(a)(5)(B)(ii) and 1325(a)(5)(B)(ii) are for all practical purposes identical and provide that a Plan cannot be confirmed over a secured creditor's objection unless the holder of such claim retain the lien securing such claim and

> (ii) the value, as of the effective date of the plan, of property to be distributed [by the trustee or the debtor] under the plan on account of such claim is not less than the allowed amount of such claim. . . .

11 U.S.C. § 1325(a)(5)(B)(ii) (bracketed material appears in § 1225 but not in § 1325).

**5.** In *Monnier*, which was a Chapter 11 case involving two sophisticated parties, only 20 months had elapsed between the time the contract was made and the time the plan was confirmed; both the contract and the plan contemplated a 15–year payment term, identical security was involved; and most significantly, the debtor had failed to make even the first installment of principal, having filed its bankruptcy petition six months before that payment became due.

mine whether the Internal Revenue Code's statutory rate of interest on federal tax claims was the appropriate market rate of interest on a priority tax claim in bankruptcy. According to the Eighth Circuit, while the IRC statutory rate may have some relevance in determining the prevailing market rate, it could not be adopted as a per se rule. *Id.* at 1288. Before concluding that the statutory rate will provide the government with the present value of its federal tax claim, the court "must first consider the payment period, the quality of the security, if any, and the risk of default in the particular case." *Id.* Because the record in *Neal Pharmacal* was insufficient to determine the prevailing market rate on a loan comparable to a deferral of the IRS's priority tax claim, the case was remanded so that the bankruptcy court could determine the appropriate interest rate in light of the evidence and the factors set forth in the Court's opinion. *Id.* at 1289.

Then, in *United States v. Doud,* 869 F.2d 1144 (8th Cir.1989), the Eighth Circuit concluded that the "market rate" approach which it had used in the Chapter 11 cases was appropriate and applicable in Chapter 12 cases as well. *Id.* at 1145 (*citing Monnier Bros.,* 755 F.2d 1336, and *Neal Pharmacal,* 789 F.2d 1283). According to the Eighth Circuit, *Monnier* "sets the broader standard relating to components of an appropriate interest rate, which should consist of a risk-free rate, plus additional interest to compensate a creditor for risks posed by the plan." *Id.* (*citing Monnier,* 755 F.2d at 1339–40). Such a determination is to be made on a case by case basis. *Id.* (*quoting Neal Pharmacal Co.,* 789 F.2d at 1289). The *Doud* Court then approved the bankruptcy court's method of determining the market rate in that case: starting with the interest rate for a riskless investment, such as treasury bills, for a term equal to the payout period proposed in the plan, and

making an upward adjustment to that rate by 2% to account for the additional risk associated with a Chapter 12 reorganization. *Id.*[6]

In *USDA v. Fisher (In re Fisher),* 930 F.2d 1361 (8th Cir.1991), the Eighth Circuit reaffirmed that the "market rate" formula is the appropriate method of determining the applicable interest rate in Chapter 12 cases and held that in that case, the Farmers Home Administration had to be paid the market interest rate rather than the below-market, government-subsidized contract interest rate. *Id.* at 1363–64. According to the Eighth Circuit, the district court below had exceeded its authority in ruling that the nature of the loan and the identity of the lender should govern over the clear mandate of § 1225(a)(5)(B). *Id.* at 1363. Because the issue of how the market rate should be calculated had not been adequately briefed in *Fisher,* the Eighth Circuit remanded the case to the district court so it could define and determine the proper market rate. *Id.* at 1364.

The Eighth Circuit noted in *Fisher,* however, that FmHA may not be entitled to the specific formula announced in *Doud* and strongly suggested that it could plausibly be argued that because FmHA must sell its land to local farmers, the "market rate" should be defined as the rate FmHA could realistically expect to receive if it sold the property to local farmers. *Id.* Consequently, by including this dicta in its opinion, the Eighth Circuit suggested that factors other than just those approved in *Doud,* including the nature of the loan, while not determinative as to the appropriate rate, should at least be considered in determining the appropriate market rate of interest.

Finally, the Eighth Circuit addressed the application of the market rate approach in Chapter 13 cases in *United States v. Roso (In re Roso),* 76 F.3d 179

---

6. Observant readers will note that the formula approved in *Doud* is nearly identical to that provided in Local Rule 3084–1.E.

(8th Cir.1996). Relying on its Chapter 12 case of *Fisher*, the Court reiterated that it had interpreted the statutory language in § 1325(a)(5)(B)(ii) to require that such claims be valued under the market rate approach and receive a market rate of interest. *In re Roso*, 76 F.3d at 180.

The Court then went on in *Roso* to "examine the meaning of a 'market rate of interest.'" *Id.* In *Roso*, the debtor had proposed to pay FmHA's secured claim at an interest rate of 6.5%, which represented the average between FmHA's 5% subsidized rate for beginning farmers and its 8% "regular rate." FmHA objected to the plan, asserting that 6.5% was below the market rate of interest. The bankruptcy court had confirmed the plan over FmHA's objection, finding that an average of FmHA's interest rates, which are below market because they are subsidized by the government, was the appropriate market rate. The district court affirmed the bankruptcy court's decision.

The Eighth Circuit disagreed and held that by definition, a subsidized rate of interest is not a market rate of interest. *Roso*, 76 F.3d at 181. Rather, it is plainly a rate of interest below the market rate. *Id.* Furthermore, it was undisputed that the debtor would not have qualified for the 5% subsidized rate were he to seek a loan in the market and that the best rate of interest he could have hoped to obtain out in the market was 8%.[7] *Id.* Accordingly, the Eighth Circuit held that the bankruptcy court had clearly erred in awarding an interest rate that was based, at least in part, on the subsidized rate. *Id.* As a result, the Eighth Circuit reversed and remanded the case so that the bankruptcy court could determine the appropriate market rate of interest *without considering* the FmHA subsidized rates. *Id.*[8]

*Roso* appears to be the last case in which the Eighth Circuit Court of Appeals has addressed the issue of what constitutes the "market rate of interest" in cram down situations. Thus, at this point, while we know that in the Eighth Circuit, a plan is to provide for a market rate of interest in Chapter 13 cram down situations (as well as Chapter 11 and 12 cases), the Eighth Circuit has not specifically mandated a formula or method as to how the courts are to determine what the market rate of interest is in a particular case. Although it approved the use of a particular formula in *Doud*, the Eighth Circuit has also indicated that courts need not *necessarily* apply the *Doud* formula in cram down situations, and in fact has suggested that if the nature of the loan calls for a rate other than that proposed in *Doud*, then such factors should be considered. *See In re Fisher*, 930 F.2d 1361.

HAFC argues, in effect, that the market rate of interest should be based upon a hypothetical coerced loan by a commercial lender to the debtor and asserts that the contract rate, or an even higher rate of interest, should be used. Debtor asserts the appropriate rate is the local rule rate, or *Doud*'s risk-free-plus rate. There are several bankruptcy courts in the Eighth Circuit who have adopted each approach. *See In re E.I. Parks No. 1 Ltd. Partnership*, 122 B.R. 549, 554 (Bankr.W.D.Ark. 1990) (listing various courts in the Eighth Circuit who have used the coerced loan approach and the *Doud* risk free rate). The bankruptcy courts in this District who have been presented with this issue following *Doud*, *Fisher*, and *Roso* have, nevertheless, generally applied the *Doud* formula in cram down cases, at least in the opinions released for publication.

For instance, in *In re Lupfer Bros.*, 120 B.R. 1002 (Bankr.W.D.Mo.1990), a Chapter

---

**7.** FmHA's farm loan specialist, who testified as to FmHA's interest rates, also testified that the interest rates offered by commercial lenders varied between 8% and 11% depending on the repayment term and the collateral securing the loan.

**8.** Note that *Roso* was an appeal from the District Court of North Dakota which apparently does not have a local rule for Chapter 13 interest rates such as the one in this case.

12 case, the Honorable Arthur B. Federman determined that a Chapter 12 plan which proposed to pay a secured line of credit in the amount of $93,000 over 25 years at an interest rate of 9¾% could not be confirmed because the proposed interest rate did not give the creditor the present value of its claim. Citing *Doud's* formula for determining the market rate, Judge Federman rejected the debtors's argument that the appropriate rate was the Federal Funds Rate (the rate used for reserves traded among commercial banks for overnight use in amounts of $1 million or more) or the Discount Rate (the charge on loans to depository institutions by the New York Federal Reserve Bank). *Id.* at 1005. Rather, Judge Federman held that the appropriate riskless rate for a 25–year payout period was the rate for 25–year treasury bills, which at that time was 8.85%. *Id.* Further, the 2% upward adjustment used in *Doud* to account for the additional risk was appropriate under these circumstances. *Id.* Thus, the appropriate interest rate was 10.85%, not the 9¾ % proposed by the debtors, and confirmation had to be denied. *Id.*[9]

Likewise, in *In re Lockard*, 234 B.R. 484 (Bankr.W.D.Mo.1999), the Honorable Jerry W. Venters very recently determined that the debtors' proposed Chapter 12 Plan could not be confirmed because it violated § 1225(a)(5)(B)(ii) in that it improperly provided for repayment of an oversecured creditor's claim over 20 years at an interest rate of 7% per annum. Although Judge Venters noted that the *Doud* formula for calculating the market rate of

interest has been criticized in some other circuits and bankruptcy courts,[10] and further expressed his own opinion that the Eighth Circuit might also give its stamp of approval to some other method of determining a market rate of interest in such cases, Judge Venters expressed his belief that the formula established in *Doud* is well reasoned and appropriate and should be applied in the case before him. *Id.* at 494–95.

> Applying the *Doud* formula should, in most cases, result in a fair rate of return for the secured creditor, although it probably will not, as a general rule, give the secured creditor the full interest rate for which it had originally bargained. Also, applying the *Doud* formula should provide a degree of uniformity and predictability on which both creditors and debtors can rely in the future as they negotiate the terms of reorganization plans.

*Id.* at 495. Under the *Doud* formula, Judge Venters concluded that the appropriate rate would be 7.50%, reflecting the 15–year Treasury bond rate of 5.50% plus an upward adjustment of 2%. *Id.* at 496.[11]

Both *In re Lupfer Bros.* and *In re Lockard* are Chapter 12 cases. As set out above, the Bankruptcy Court for this District has implemented a local rule attempting to set a market rate in all Chapter 13 cases. Our local rule sets the rate at a formula almost identical to the one approved in *Doud*, namely, the 30–year treasury bond rate plus 2% nominal interest

---

9. In addition, Judge Federman held that the proposed 25–year payout on a claim which had matured and were due prior to the filing of the Petition, was "so out of proportion to the pre-existing contract that it amount[ed] to an unreasonable frustration of the expectations of the creditor." *Lupfer Bros.*, 120 B.R. at 1005. Confirmation was denied on that ground as well.

10. *See e.g. General Motors Acceptance Corporation v. Jones*, 999 F.2d 63 (3rd Cir.1993) (declining to follow *Doud* ); *Hardzog v. Federal Land Bank of Wichita (In re Hardzog)*, 901

F.2d 858, 860 (10th Cir.1990) (opining that *Doud* does not accurately reflect the market and "may unduly penalize the lender or borrower"); *Warehouse Home Furnishings Distribs, Inc. v. Richards (In re Richards)*, 106 B.R. 762, 763–64 (Bankr.M.D.Ga.1989).

11. As in *Lupfer Bros.*, Judge Venters held that confirmation had to be denied on the alternative ground that the 20–year repayment period was too long. *Lockard*, 234 B.R. at 495–96.

rate per annum.[12] HAFC suggests that this rate does not comply with § 1325(a)(5)(B)(ii) in that the contract rate (or an even higher rate, as it attempted to demonstrate at the hearing in this case) more accurately reflects the market rate of interest. This Court disagrees and finds the Local Rule's method for calculating the market rate of interest to be appropriate in Chapter 13 cases.

Prior to 1994, our Local Rules provided that the Chapter 13 Trustee was to use the "legal rate of interest" on undersecured claims and the contract rate of interest on fully secured claims. *See* Local Rule 13.06.E (effective September 1, 1991). In 1994, Rule 13.06.E was amended to provide that unless otherwise ordered by the Court, the Trustee was to "use the 9% nominal rate of interest on undersecured claims and the contract rate on fully secured claims." *See* Local Rule 13.06.E (effective February 1, 1994).

Then on February 7, 1996, the Bankruptcy Court en banc for the Western District of Missouri entered an Order Amending Local Rules wherein we amended Rule 13.06 and set the Chapter 13 Rate at the average of the Boatmen's Bank, Commerce Bank, and United Missouri Bank prime rates plus 3% nominal interest rate per annum, to be adjusted every six months. Further, under this amended rule, the Chapter 13 Rate could not be less than 9% and could not exceed 15% nominal interest rate. This rule had an effective date of March 1, 1996. On April 22, 1996, the Eighth Circuit Judicial Council entered an Order approving Rule 13.06E as amended. Copies of the 1996 version of Rule 13.06E and the Judicial Council's Or-

der approving it are attached to this Order as Appendix A.

Finally, on February 13, 1997, the United States Bankruptcy Court en banc for the Western District of Missouri entered an Order Adopting Local Rules wherein the Local Rules were revised and renumbered and wherein the present version of Rule 3084–1.E.4, setting the rate according to *Doud's* authority, was adopted. On May 30, 1997, the Eighth Circuit Judicial Council again entered an Order approving the renumbered and amended local rules. Copies of the current (1997) version of Local Rule 3084–1.E. and the Judicial Council's Order approving it are attached to this Order as Appendix B.

As far as this Court can tell, no one has strenuously challenged the present version of Local Rule 3084–1.E.4, at least not as indicated in the published opinions out of this District. Judge Venters was briefly called upon to address the application of the Local Rule in *In re Campbell,* 234 B.R. 101 (Bankr.W.D.Mo.1999), wherein HAFC challenged the debtor's plan on the ground that it did not comply with § 1325(a)(5)(B)(ii) and asserted that it was entitled to be paid its contract rate of 21% "at least through the date of confirmation." Judge Venters simply held that HAFC was correct that it was entitled to its contract rate of 21% through the date of confirmation, but held that HAFC was to receive the local Chapter 13 rate of interest on its secured claim after confirmation. *Id.* at 104. In all likelihood, he was not called upon by the parties in that case to specifically analyze the propriety of the Local Rule.[13]

On the other hand, the Bankruptcy Court for the Eastern District of Missouri,

---

**12.** The only difference between the *Doud* formula and the Local Rule rate is that *Doud* suggested that courts start with the treasury bond rate for the period of time proposed in the plan, whereas our Local Rule uses the 30–year treasury bond rate in all cases.

**13.** This Court was called upon in 1989 to determine the appropriate rate on an S.B.A. disaster loan in a Chapter 13 plan. In that

case, I held that under Eighth Circuit precedent, neither party was automatically entitled to the contract rate and determined the rate based on the current rate (at that time) for S.B.A. disaster loans. However, this case was prior to the enactment of our local rules setting the rate. *See In re Jones,* 101 B.R. 593 (Bankr.W.D.Mo.1989).

which has a local rule somewhat similar to our Rule 3084–1.E, was faced with this issue in *In re Wilmsmeyer*, 171 B.R. 61 (Bankr.E.D.Mo.1994). In that case, the Honorable Barry S. Schermer upheld and applied the rate as provided under the Eastern District's local rule over the secured creditor's objection.

In *Wilmsmeyer*, as in the case at bar, the debtor submitted a Chapter 13 Plan which proposed to pay a secured creditor's claim (regarding a mobile home) at an interest rate of 9.5% as provided in the Local Rule for the Eastern District of Missouri.[14] The secured creditor objected to the Plan, asserting it was entitled to its 19.18% contract rate of interest. In his opinion denying the creditor's objection, Judge Schermer discussed the background and rationale behind the Eastern District's adoption of its local rule:

> Local Rule 13–2(g) was developed by this Court as part of a larger set of Local Rules governing Chapter 13 practice. The rule is one of administrative, judicial, and economic convenience; furthermore the formula was developed as one which best reflects the time value of money as well as existing market conditions.

> In this District nearly 4,000 Chapter 13 cases are filed every year. Without reference to a standard discount rate by which the § 1325(a)(5)(B)(ii) present value requirement can be established, this Court would entertain litigation as to the appropriate rate at nearly every Chapter 13 confirmation hearing. The Trustee, whose duty it is to pay all creditors pursuant to a Chapter 13 plan, would similarly suffer an extreme inconvenience as each secured claim paid under a confirmed Chapter 13 plan would require a different calculation. To avoid these burdens on limited resources and to save all parties costly legal fees, Local

Rule 13–2(g) was established and implemented.

*Id.* at 62–63 (footnote omitted).

██ Our Local Rule 3084–1.E was established and implemented for similar reasons, namely, to avoid the burdens on limited resources and to save all parties the costly legal fees involved in litigating the appropriate market rate of interest in each and every Chapter 13 plan confirmation, while at the same time attempting to adhere to the Eighth Circuit's mandate that we apply a market rate of interest. This Court believed, and still believes, that the rate reflected in our Local Rule is an appropriate measure of the market rate of interest in the Chapter 13 context. As Judge Venters said in *In re Lockard*, although the Eighth Circuit might also give its stamp of approval to some other method of determining a market rate of interest, it has expressly approved the *Doud* formula. *Lockard*, 234 B.R. at 495. In addition, Local Rule 3084–1.E.5, which provides that the posted Chapter 13 Rate in effect at the time of the filing of the initial plan shall remain in effect throughout the entire life of the case, complies with the Eighth Circuit's specific rejection of a floating rate of interest "as administratively difficult and rendering determination of the feasibility of the debtor's reorganization plan quite complicated." *Doud*, 869 F.2d at 1146 (*citing Neal Pharmacal*, 789 F.2d at 1286).

This Court agrees with Judge Venters that the *Doud* formula is well reasoned and appropriate in Chapter 13 cases. Furthermore, it provides "a degree of uniformity and predictability on which both creditors and debtors can rely in the future as they negotiate the terms of reorganization plans." *Id.*

██ Moreover, as Judge Schermer said in *Wilmsmeyer*, the creditor's assertion in the case at bar that the 14.95% contract

---

**14.** The Eastern District's Local Rule 13–2(g) provides that in Chapter 13 cases, absent proof to the contrary, the applicable interest rate shall be the Wall Street Journal prime rate plus 3½%. *See In re Wilmsmeyer*, 171 B.R. at 63.

rate of interest (or an even higher rate of interest) is the appropriate rate is misplaced because such a contract rate "was not intended to merely preserve the status quo, as § 1325(a)(5)(B)(ii) requires, but instead was intended to generate a substantial profitable return on [the creditor's] investment." *Wilmsmeyer,* 171 B.R. at 64. This Court agrees that permitting substantial profits for a creditor in a Chapter 13 cram down does not square with the Eighth Circuit's directives. *Accord In re Value Recreation, Inc.,* 228 B.R. 692, 697 (Bankr.D.Minn.1999) ("[p]resent value in the bankruptcy environment, however, does not include profit") (*citing In re Fisher,* 29 B.R. 542, 546 (Bankr.D.Kan.1983)).

This Court is aware that some courts and commentators have rejected the use of local rules setting the interest rate in all Chapter 13 cases without making an individual determination in each case. *See Green Tree Fin. Servicing Corp. v. Smithwick (In re Smithwick),* 121 F.3d 211 (5th Cir.1997) (reversing the district court's approval of the bankruptcy court's use of local rule setting Chapter 13 rate); *In re Galvao,* 183 B.R. 23, 26 (Bankr. D.Mass.1995) (rejecting use of local rule fixing the interest rate in Chapter 13 cases as inappropriate). The Court also recognizes that a local rule such as Rule 3084–1.E may seem contrary to the Eighth Circuit's mandate that the market rate of interest be determined on a case by case basis. However, the cases in which the Eighth Circuit made that ruling did not call upon the Eighth Circuit to address the administrative problems peculiar to Chapter 13 cases by virtue of the sheer number of cases in Chapter 13 and the relatively small resources in Chapter 13 cases as compared to the typical Chapter 11 and 12 cases.

In sum, this Court believes that the application of our local rule is appropriate in light of the Eighth Circuit's directives in its case law decisions, the Eighth Circuit Judicial Council's approval of the Local Rules, and particularly in light of the special circumstances suggesting such a rule in Chapter 13 cases.

For that reason, Debtor's Amended Plan which proposes to pay HAFC's claim at the interest rate provided by the Local Rules is confirmable. HAFC's Objection to Confirmation is DENIED. The debtors' Amended Chapter 13 Plan is CONFIRMED.

## APPENDIX A

### IN THE UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF MISSOURI EN BANC

### *ORDER AMENDING LOCAL RULES*

For good cause appearing, the United States Bankruptcy Court en banc for the Western District of Missouri does hereby unanimously

**ORDER** that Local Rule 13.06E, Interest on Secured Claims, as well as Administrative Appendices 1–00 through 13–04 of the Local Rules of Practice and Procedure of the United States Bankruptcy Court for the Western District of Missouri be, and are hereby, amended this 7th day of February, 1996, as set forth in the attachments hereto, to be effective March 1, 1996.

/s/ Frank W. Koger
Frank W. Koger, Chief Bankruptcy Judge

/s/ Karen M. See
Karen M. See, Bankruptcy Judge

/s/ Arthur B. Federman
Arthur B. Federman, Bankruptcy Judge

Kansas City, Missouri
February 7, 1996

**RULE 13.06. CHAPTER 13 PROOFS OF CLAIM; OBJECTIONS TO CLAIMS**

Local Rule 13.06E is amended (effective 3/1/96) to read:

**E. Interest on Secured Claims.** All filed and allowed secured claims will be paid interest unless the plan/plan summary **specifically** provides for "zero" interest.

1. Filed and allowed oversecured claimants shall receive their contract rate of interest, if provided on or with the proof of claim, from the date of the petition up to the date of confirmation. From the date of confirmation forward, filed and allowed oversecured claimants shall receive the posted **"CHAPTER 13 RATE."** If the contract rate is not provided on the proof of claim, such a claimant will receive the posted **"CHAPTER 13 RATE"** from the date of the petition forward.

   a. An oversecured claim is one in which the fair market value of the collateral exceeds the total amount of the claim.

2. Filed and allowed undersecured claimants and filed and allowed fully secured claimants shall receive the posted **"CHAPTER 13 RATE"** from the date of the petition forward on the secured portions of their claims.

   a. A fully secured claim is one in which the fair market value of the collateral equals the total amount of the claim.

   b. An undersecured claim is one in which the fair market value of the collateral is less than the total amount of the claim.

3. A claim secured only by real estate which is the debtor's principal residence, shall receive its contract rate of interest from the date of the petition forward, if provided on the proof of claim, otherwise it will receive the posted **"CHAPTER 13 RATE."**

   a. For adjustable rate mortgages, the trustee shall use the interest rate provided in the plan plan summary. If the debtor's plan/plan summary does not provide an interest rate, the trustee shall use the appropriate posted **"CHAPTER 13 RATE."**

   b. If the adjustable rate changes, it is the responsibility of the debtor or the creditor to notify the trustee of the new interest rate so that the claim can be adjusted accordingly

4. The posted **"CHAPTER 13 RATE"** shall be determined by the standing Chapter 13 trustee for the Western District of Missouri semi-annually as follows:

   a. March 1 to August 31: For cases with the initial plan filed between March 1 and August 31, the interest rate shall be the average of the Boatmen's Bank. Commerce Bank, and United Missouri Bank prime rates, as of February 1, plus 3% nominal interest rate per annum. The standing Chapter 13 trustee shall make the rate for the ensuing six-month period available to the Clerk of the Bankruptcy Court for posting for the first business day following February 10.

   b. September 1 to February 28 (February 29 if a leap year): For cases with the initial plan filed between September 1 and February 28 (February 29 if a leap year), the interest rate shall be the average of the Boatmen's Bank, Commerce Bank, and United Missouri Bank prime rates, as of August 1, plus 3% nominal interest rate per annum. The standing Chapter 13 trustee shall make the rate for the ensuing six-month period available to the Clerk of the Bankruptcy Court for posting for the first business day following August 10.

5. **THE POSTED "CHAPTER 13 RATE" IN EFFECT AT THE TIME OF FILING OF THE INITIAL PLAN SHALL REMAIN IN EFFECT THROUGHOUT THE ENTIRE LIFE OF THE CASE.**

6. The posted **"CHAPTER 13 RATE"** shall not be less than 9% and shall not exceed 15% nominal interest rate.

7. This rule goes into effect for all cases in which the initial plan is filed on or after March 1, 1996. For cases in which the initial plan is filed prior to March 1, 1996, the trustee shall use Local Rule 13.06E as it stood prior to this amendment, i.e., 9% nominal interest rate on undersecured claims and the contract rate on fully secured claims, which rates shall remain in effect throughout the entire life of the case.

## ATTACHMENT A

**UNITED STATES COURTS**
Judicial Council of The Eighth Circuit
P.O. Box 75428
St. Paul, Minnesota 55175
612-290-3311

Facsimile:
612-290-3309

**CIRCUIT EXECUTIVE**
June L. Boadwine

## EIGHTH CIRCUIT JUDICIAL COUNCIL

### ORDER

I hereby certify that the Eighth Circuit Judicial Council has approved Amended Rule 13.06E of the U.S. Bankruptcy Court, Western District of Missouri, filed February 7, 1996, the effective date of which is March 1, 1996.

/s/ June L. Boadwine
June L. Boadwine
Circuit Executive

St. Paul, Minnesota
April 22, 1996

cc: Judicial Council Members
 Chief Judge Frank W. Koger
 Robert F. Connor, Clerk
 Administrative Office

Approval was given by the Rules and Bankruptcy Committee.

## APPENDIX B

### IN THE UNITED STATES BANKRUPTCY COURT WESTERN DISTRICT OF MISSOURI EN BANC

*ORDER ADOPTING LOCAL RULES*

The United States Bankruptcy Court en banc for the Western District of Missouri hereby

ORDERS that the revised and renumbered Local Rules of Procedure of the United States Bankruptcy Court, Western District of Missouri, set forth in the attachment hereto, are hereby adopted February 13, 1997, to be effective April 14, 1997.

Signed Frank W. Koger
Frank W. Koger, Chief Bankruptcy Judge

Signed Karen M. See
Karen M. See, Bankruptcy Judge

Signed Arthur B. Federman
Arthur B. Federman, Bankruptcy Judge

### LOCAL RULES OF PRACTICE UNITED STATES BANKRUPTCY COURT WESTERN DISTRICT OF MISSOURI

ADOPTED FEBRUARY 13, 1997;
EFFECTIVE APRIL 14, 1997

. . .

days after conclusion of the § 341 meeting of creditors.

F. If the Chapter 13 plan does not incorporate the plan summary by reference, to the extent there are inconsistencies between the plan and plan summary, the provisions of the summary are deemed to be the provisions of the plan.

**RULE 3084–1. CHAPTER 13 PROOFS OF CLAIM; OBJECTIONS TO CLAIMS**

A. **File in Duplicate.** Chapter 13 claims shall be filed in **duplicate** with the Clerk **and** served on debtor's counsel. The

Clerk will forward a copy to the trustee for entry on a claims register and further processing, including notice of transfer of claim, as required by Bankruptcy Rule 3001(e).

**B. Claims Register.** The trustee will make the claims register available for public review during business hours.

**C. Classification.** If a claim does not state whether it is secured, priority or general unsecured, it will be deemed a general unsecured claim unless it is apparent from attachments that it is a perfected secured claim.

**D. Secured Claim.** A secured claim must state a fair market value for each item of collateral. The trustee will use the creditor's fair market value, or debtor's value if the creditor does not provide one. Listing the amount of debt on the "secured" line of the claim does not constitute providing the fair market value.

**E. Interest on Secured Claims.** All filed and allowed secured claims will be paid interest unless the plan/plan summary **specifically** provides for **"zero"** interest.

1. Filed and allowed over secured claimants shall receive their contract rate of interest, if provided on or with the proof of claim, from the date of the petition up to the date of confirmation. From the date of confirmation forward, filed and allowed oversecured claimants shall receive the posted **"CHAPTER 13 RATE."** If the contract rate is not provided on the proof of claim, such a claimant will receive the posted **"CHAPTER 13 RATE"** from the date of the petition forward.

   a. An oversecured claim is one in which the fair market value of the collateral exceeds the total amount of the claim.

2. Filed and allowed undersecured claimants and filed and allowed fully secured claimants shall receive the posted **"CHAPTER 13 RATE"** from the date

of the petition forward on the secured portions of their claims.

   a. A fully secured claim is one in which the fair market value of the collateral equals the total amount of the claim.

   b. An undersecured claim is one in which the fair market value of the collateral is less than the total amount of the claim.

3. A claim secured only by real estate which is the debtor's principal residence, shall receive its contract rate of interest from the date of the petition forward, if provided on the proof of claim, otherwise it will receive the posted **"CHAPTER 13 RATE."**

   a. For adjustable rate mortgages, the trustee shall use the interest rate provided in the plan/plan summary. If the debtor's plan/plan summary does not provide an interest rate, the trustee shall use the appropriate posted **"CHAPTER 13 RATE."**

   b. If the adjustable rate changes, it is the responsibility of the debtor or the creditor to notify the trustee of the new interest rate so that the claim can be adjusted accordingly.

4. The posted **"CHAPTER 13 RATE"** shall be determined by the standing Chapter 13 trustee for the Western District of Missouri semi-annually as follows:

   a. July 1 to December 31: For cases with the initial plan filed between July 1 and December 31, the interest rate shall be the 30 year treasury bond rate as of June 1, plus 2% nominal interest rate per annum. The standing Chapter 13 trustee shall make the rate for the ensuing six-month period available to the Clerk of the Bankruptcy Court for posting for the first business day following June 10.

   b. January 1 to June 30: For cases with the initial plan filed between January 1 and June 30, the interest rate shall be the 30 year treasury bond rate as of December 1 of the preced-

ing year, plus 2% nominal interest rate per annum. The standing Chapter 13 trustee shall make the rate for the ensuing six-month period available to the Clerk of the Bankruptcy Court for posting for the first business day following December 10 of the preceding year.

**5. THE POSTED "CHAPTER 13 RATE" IN EFFECT AT THE TIME OF FILING OF THE INITIAL PLAN SHALL REMAIN IN EFFECT THROUGHOUT THE ENTIRE LIFE OF THE CASE.**

6. This rule goes into effect for all cases in which the initial plan is filed on or after July 1, 1997. For cases in which the initial plan is filed prior to July 1, 1997, the trustee shall use Local Rule 13.06E as it stood prior to this amendment.

**F. Objections.** It shall be debtor's duty and not the trustee's to file objections to claims. The debtor must serve the objection on the claimant, claimant's attorney and the trustee. Claimants must serve a copy of claims on debtor's attorney.

. . .

**United States Courts**
Judicial Council of The Eighth Circuit
P.O. Box 75428
St. Paul, Minnesota 55175
612-290-3311

Facsimile:
612-290-3309

**CIRCUIT EXECUTIVE**
June L. Boadwine

### EIGHTH CIRCUIT JUDICIAL COUNCIL

### ORDER

I hereby certify that the Eighth Circuit Judicial Council has approved the renumbered local rules of practice for the U.S. Bankruptcy Court, Western District of Missouri, adopted February 13, 1997, and effective April 14, 1997.

/s/ June L. Boadwine
June L. Boadwine,
Circuit Executive

St. Paul, Minnesota
May 30, 1997

cc: Judicial Council Members
 Chief Judge Frank W. Koger
 Robert F. Connor, Clerk
 Administrative Office

Approval was given by the Rules and Bankruptcy Committees.