**In re Charles R. HARRIS, Debtor.**

**Bankruptcy No. 93–74265.**

United States Bankruptcy Court,
D. South Carolina.

Feb. 24, 1994.

Sheila R. Young, Law Office of John K. Fort, Spartanburg, SC, for debtor.

Ronald F. Barbare, Lathan & Barbare, P.A., Greenville, SC, for creditor, Nations-Banc.

John B. Butler, III, Columbia, SC, Chapter 13 Trustee.

### ORDER

WM. THURMOND BISHOP, Bankruptcy Judge.

This matter comes before the court upon NationsBanc Financial Services Corp.'s (hereinafter referred to as "NationsBanc"), Objection to Amended Chapter 13 Plan. At the hearing, NationsBanc was represented by Ronald F. Barbare of Lathan & Barbare, P.A.; the debtor was present and represented by Sheila R. Young of the Law Office of John Kirkland Fort; and the Chapter 13 Trustee was present and presented oral argument.

The debtor filed a Voluntary Petition for relief under Chapter 13 of the Bankruptcy Code on September 2, 1993, and filed a Chapter 13 Plan with his Petition. The Meeting of Creditors was held on October 7, 1993, at which time the only Objection to the Chapter 13 Plan was by the Chapter 13 Trustee.

Because of unrelated state and federal income tax issues and to cure the Objection of the Chapter 13 Trustee, debtor amended his Chapter 13 Plan on November 4, 1993. In order to amortize the tax claims within the life of the Chapter 13 Plan, debtor reduced the monthly payment to NationsBanc from $230 per month to $155 per month. The interest rate, however, to be paid on the arrearage claim remained nine percent.

NationsBanc filed its Objection on or about November 9, 1993, claiming that it was entitled to the contract interest rate of 17% on the arrearage claim. NationsBanc's argument is based upon Section 1322(b)(2) of the Bankruptcy Code which prohibits the modification of rights of holders of secured claims which are secured only by a security interest in the debtor's residence and upon the recent United States Supreme Court decision of *Nobelman v. American Savings Bank,* —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993).

Debtor acknowledged that Nations-Banc is oversecured and accordingly entitled to postpetition interest on its arrearage claim. *Rake v. Wade,* —— U.S. ——, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993). Debtor maintains, however, that NationsBanc is only entitled to that rate of interest which will compensate Nationsbanc for the delay in receiving the principal amount. *United Carolina Bank v. Hall,* 993 F.2d 1126 (4th Cir. 1993). For the reasons set forth below, NationsBanc's Objection to the Amended Plan is overruled and the debtor's Chapter 13 Plan will be confirmed upon the recommendation of the Chapter 13 Trustee. The mortgage which is attached to the Proof of Claim filed by NationsBanc grants an interest in the debtor's residence "together with all and singular rights, members herditaments, and appurtenances to the same belonging in any way incident or appertaining *and of all the rents, issues, and profits which may arise or be had therefrom, and including all heating, plumbing, and lighting fixtures now or hereafter attached, connected or fitted thereto in any manner.*" (emphasis added). The debtor argues that from a reading of Nations-Banc's mortgage that it is secured by more than just the debtor's residence. Rents and fixtures are a part of the debtor's principal residence and, as such, do not exclude the residence from the protection of 11 U.S.C. 1322(b)(2). *In re Spano,* 161 B.R. 880 (Bankr.D.Conn.).

Having determined that the mortgage in question is secured only by a security interest in the debtors's residence, NationsBanc's reliance upon *Nobelman* is misplaced. The question addressed in *Nobelman* was "whether Section 1322(b)(2) prohibits a Chapter 13 debtor from relying on Section 506(a) to reduce an undersecured homestead mortgage to the fair market value of the mortgaged residence." *Nobelman, supra* at ——, 113 S.Ct. at 2108. The case before this court involves an oversecured mortgage rather than an undersecured one. Additionally, the case before this court does not involve bifurcation, which this court has consistently held is prohibited by Section 1322(b)(2), but rather the curing of an arrearage claim under Section 1322(b)(5).

Section 1322(b)(5) of the Bankruptcy Code provides that the Chapter 13 Plan may

*notwithstanding [Section 1322(b)(2) ]*, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due. (emphasis added).

The *Nobelman* court acknowledged that the curing of prepetition arrears is a modification allowed by the Bankruptcy Code itself and is outside of the prohibition of Section 1322(b)(2). *Nobelman, supra* at ——, 113 S.Ct. at 2110.

During the same term, the Supreme Court determined that in an oversecured mortgage situation, the mortgage holder is entitled to preconfirmation and postconfirmation interest on the prepetition arrears even though the mortgage instrument does not provide for such interest. *Rake, supra* at ——, 113 S.Ct. at 2193. The facts of the *Rake* case and the case before this court are essentially identical. In each case the debtors proposed a Chapter 13 Plan which would cure prepetition arrears through monthly payments with interest at a rate other than the contract rate. Additionally, the mortgage holders were oversecured.

■ In *Rake,* the Court relied upon Section 506(b) to conclude that oversecured mortgage holders are entitled to preconfirmation interest. NationsBanc, as an oversecured creditor, is entitled to interest on the arrearage at the contractual rate of 17% from the date the debtor filed his bankruptcy petition until the date of the entry of the order. (Preconfirmation interest). *Rake v. Wade, supra; In re Hugee,* 54 B.R. 676 (Bankr.D.S.C.1985).

Since the trustee will pay 9% interest on the amount of the arrearage claim and will compute that interest from the *date of the petition,* this court must insure that NationsBanc does not receive 9% interest on the 17% interest charge, since that would be interest on interest. In order to receive preconfirma-

tion interest, Nationsbanc must file an amended arrearage claim which includes in the total claim amount an adjusted preconfirmation interest charge equal to the difference between the contract rate (17%) and the plan rate (9%) for the number of days from the date of the petition to the date of the entry of this order.[1]

Since NationsBanc may amend its claim to add preconfirmation interest, further amendment of the plan is not necessary to satisfy § 506(b) as made applicable by § 1325(a)(1).[2]

As for postconfirmation interest, the Court looked to Section 1325(a)(5) which provides that a Chapter 13 Plan is to be confirmed if the secured claim holder accepts the plan; or the debtor surrenders the property; or the plan provides that the secured claim holder retain the lien securing such claim and the value of property distributed under the plan be not less than the allowed amount of the claim. The Court noted that

a creditor receives the "present value" of its claim only if the total amount of the deferred payments includes the amount of the underlying claim plus an appropriate amount of interest to compensate the creditor for the decreased value of the claim caused by the delayed payments. *This generally involves a determination of any appropriate discount rate and a discounting of the stream of deferred payments back to the present dollar value of the claim at confirmation.* Rake, supra at ——, 113 S.Ct. at 2192, n. 8 (emphasis added).

The Court specifically refrained from deciding the appropriate rate of interest debtors must pay on the curing of prepetition arrears. *Id.*

In addressing the appropriate discount rate and discounting the stream of payment back to the present dollar value of the claim at the time of confirmation, the Court seems to be referring to an analysis or process

---

1. The amended proof of claim should be accompanied by an attachment containing the following information:

$_____ per day for interest at 17% − $_____ per day for interest at 9% = $_____ per day × ___ days =

$_____ (total adjusted preconfirmation interest).

2. Section 1325(a)(1) provides

"... [T]he court shall confirm a plan if ... the plan complies with the provisions of this chapter and with the other applicable provisions of this title...."

through which lower courts must go in determining the appropriate interest rate. This court cannot simply choose the contract interest rate, as argued by NationsBanc, without determining whether that is the appropriate discount rate.

This court finds the facts and reasoning of the *Rake* decision both controlling and persuasive. The fact situation and question presented to the *Rake* Court and the facts and issues presented to this court are nearly identical. This court, however, must answer the question specifically left undecided by the *Rake* Court—the appropriate rate of interest debtor must pay through his Chapter 13 Plan when curing a prepetition arrears.

This court has long held that the appropriate interest rate required to meet the value test of Section 1325(a)(5) of the Bankruptcy Code may be something other than the contract interest rate. *In re Hugee,* 54 B.R. 676 (Bankr.S.C.1985). Recently, the Fourth Circuit Court of Appeals examined this very issue in *United Carolina Bank v. Hall.* Although decided prior to the *Rake* decision, *Hall* fleshes out the method by which the appropriate interest rate is to be determined under Section 1325(a)(5) of the Bankruptcy Code.

■ The *Hall* court rejected the cost of funds approach and adopted a business opportunity approach to establishing the appropriate interest rate. Courts are to

tak[e] into account not only the rates which [the creditor] obtains from similar loans in the area but also its expenses in obtaining those loans. *Hall, supra* at 1131.

The expenses to be taken into account are "the expenses of liquidating the collateral and of making a new loan in the marketplace". *Id.*

To apply the principles set forth in *Hall,* the court must first determine the market interest rate of similar loans in the area as of the date of the contested confirmation hearing. The court should then put a dollar value on the amount of interest to be paid (interest charge) at the market rate on the total debt (not just the arrearage) at the contractual payment.[3] From this figure, the court should deduct the hypothetical expenses of liquidating the real property if possession was surrendered by the debtor and the hypothetical expenses NationsBanc would actually incur in making a new loan. The resulting total (adjusted interest charge) should then be translated to a corresponding interest rate for repayment of the total debt at the contractual monthly payment.[4] This interest rate should be rounded to the nearest one-tenth of a percent. The resulting interest rate should be used as the discount rate under § 1325(a)(5)(B)(ii) for the payment on the arrearage, (so long as this rate does not exceed the contract rate), even if the resulting interest rate is *less* than the interest rate originally proposed in the plan.

■ Prior to *Hall,* this court used a discount rate set on an annual basis by a court sanctioned committee. The discount rate as set June 1, 1993, was 7%. There is no reason to discontinue this practice unless a creditor timely files a proper written objection to the interest rate and provides credible evidence as to the current market rate, the dollar amount of the market interest rate charge, and expenses of liquidation and making a new loan.

■ In this case, the debtor's proposed interest rate equals or exceeds the 7% rate set by committee and is, therefore, presumptively reasonable. The debtor, therefore, has satisfied his burden of proof as to the confirmability of his amended plan.

**3.** Since § 1322(b)(2) prohibits modification of NationsBanc's contractual monthly payment, the market rate of interest must be applied to the total debt as if it were paid at the *contractual* monthly payment. If the secured debt in question is not within the purview of § 1322(b)(2), the court should put a dollar value on the amount of interest to be paid at the market rate on the total debt (or the value of the secured claim if it is bring valued) at the monthly payment *proposed* for the creditor in the Chapter 13 plan.

**4.** Since § 1322(b)(2) prohibits modification of Nationsbanc's contractual monthly payment, the market rate of interest must be applied to the total debt as if it were paid at the *contractual* monthly payment. If the secured debt in question is not within the purview of § 1322(b)(2), the court should put a dollar value on the amount of interest to be paid at the market rate on the total debt (or the value of the secured claim if it is being valued) at the monthly payment *proposed* for the creditor in the Chapter 13 plan.

The only evidence offered at the hearing regarding NationsBanc's current lending rates was the rates published in the *Greenville News*. Of the various rates listed for NationsBanc, the highest rate appears to be 8.375%. NationsBanc offered no evidence or argument to dispute debtor's claim that this is NationsBanc's current interest rate. Additionally, no evidence was presented regarding the expenses of liquidation or of making a new loan in the marketplace.

Evidence of these expenses would serve only to reduce the amount of interest which the debtor would have to pay on the arrearage claim. Moreover, the creditor would be the only source of the information required to present evidence of these expenses. To place the burden of producing such evidence upon the debtor, therefore, would be impractical and inequitable. Accordingly, this court finds that the debtor has met his burden of establishing that the interest rate proposed in his Chapter 13 Plan meets the requirements of Section 1325(a)(5) and this more than compensates NationsBanc for the delay it will experience in receiving payments on its arrearage claim.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that NationsBanc's Objection to Amended Chapter 13 Plan should be, and hereby is, overruled.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that debtor's Amended Chapter 13 Plan shall be confirmed upon the court's receipt of the Chapter 13 Trustee's recommendation.

AND IT IS SO ORDERED.