**In re Romao GALVAO and Maria Galvao, Debtors.**

**Bankruptcy No. 95–10723–JNF.**

United States Bankruptcy Court, D. Massachusetts.

June 22, 1995.

---

**24**

Joseph Albiani, Winchester, MA, for debtors.

Daniel D. Gray, Law Offices of Mark P. Harmon, Newton Highlands, MA, for Federal Nat. Mortg. Ass'n.

Richard Askenase, for Chapter 13 trustee.

## MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

## I. PROCEDURAL BACKGROUND AND FACTS

The matters before the Court for determination are 1) the Objection of Federal National Mortgage Association ("FNMA") to the Chapter 13 Plan (the "Plan") filed by Debtors, Romao and Maria Galvao (the "Debtors"); 2) the Debtors' Motion Under 11 U.S.C. § 1322(b)(2) to Modify the Rights of the Holder of a Secured Claim (the "§ 1322(b)(2) Motion"), through which the Debtors seek a determination that the mortgage held by FNMA can be bifurcated and modified because property they own is not only their residence, but serves a commercial investment purpose[1]; and 3) the Debtors' Motion for Determination of Secured Status under 11 U.S.C. § 506 (the "§ 506 Motion"), through which the Debtors seek a determination that the allowed amount of FNMA's secured claim is $54,000, and that the balance of its claim is a general unsecured claim in the sum of $140,000. After FNMA filed an objection to the § 506 Motion, the parties

agreed that the allowed amount of FNMA's secured claim is $56,000.

The Debtors propose to pay FNMA's secured claim in equal monthly installments over the 60 month term of the Plan, without interest. They intend to pay 10 percent of FNMA's unsecured deficiency claim over the term of the Plan. In its objection to confirmation of the Plan, FNMA, among other things, argues that the Plan fails to comply with 11 U.S.C. § 1325(a)(5)(B), as it does not include the payment of interest on deferred payments.

The Court held a hearing on FNMA's objection to confirmation. At the hearing, the Court ruled that the Debtors' Plan could not be confirmed because of the absence of any provision for the payment of interest on the secured portion of the claim to assure that FNMA was going to receive the present value of its secured claim. In response, the Debtors' attorney indicated that the Debtors intended to amend their Plan to provide for payment of interest but that the parties had been unable to agree on the appropriate interest rate. The Court granted the parties' request for leave to file briefs on the issues of the amount and method of calculating the interest required by 11 U.S.C. § 1325(a)(5)(B).

## II. ARGUMENTS

In their brief, the Debtors maintain that a 5.5 percent annual interest rate satisfies the requirement of § 1325(a)(5)(B). In its brief, FNMA asserts that under their Plan the Debtors must pay the fair market rate charged a borrower for a similar loan, which in its view is the current interest on a five-year treasury bill, plus 2.75 percent, representing the current market rate for a five-year mortgage.

## III. DISCUSSION

A Chapter 13 debtor's plan must provide that a holder of a secured claim receive "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim ... [in an amount] ... not less than the allowed amount of such

---

**1.** FNMA did not file an objection to the § 1322(b)(2) Motion.

claim." *See* 11 U.S.C. § 1325(a)(5)(B)(ii). As explained by the leading Chapter 13 commentator, Judge Lundin, "[t]he phrase 'value, as of the effective date of the plan' means that a stream of future payments must be discounted to present value, and the present value of the stream of future payments must be not less than the allowed amount of the creditor's claim." Keith M. Lundin, 2 *Chapter 13 Bankruptcy*, ¶ 5.50, at 5–139 (Wiley 1994) (citations omitted) (hereinafter cited as *"Lundin"*).

 The present value requirement of § 1325(a)(5)(B) is a mandatory prerequisite for confirmation of a Chapter 13 plan, and the bankruptcy court cannot confirm a plan that does not comply with this requirement. *See In re Barnes*, 32 F.3d 405, 407 (9th Cir.1994). To satisfy the "present value" requirement, in cases where the debtor is retaining the collateral and paying the secured creditor periodic payments through a "cramdown" plan, the debtor has the burden of showing that the plan provides for an appropriate rate of interest to compensate the secured creditor for the delay in the payment of its claim.[2] *Id., citing In re Chinichian*, 784 F.2d 1440, 1443–44 (9th Cir.1986); *see also Lundin, supra*, at 5–150. In light of these principles, the Debtors' Plan, which contains no provision for the payment of interest on the allowed secured claim, is not confirmable.

In view of the Debtors' oral representation, through counsel, that they intend to amend their Plan to provide for the payment of interest, the next issue to be determined is the amount of interest the Debtors must pay to prevent dilution of the secured party's claim through delay in payment. The cases dealing with this issue are in a state of disarray.

A plurality of courts have adopted the "market rate" approach—the view that the current, prevailing market rate for similar loans in the community provides present value to the secured creditor. *See, e.g., In re Ferrill*, 137 B.R. 623 (Bankr.S.D.Miss.1988); *In re Jordan*, 130 B.R. 185 (Bankr.D.N.J.

1991); *In re Mellema*, 124 B.R. 103 (Bankr. D.Colo.1991). Some courts that have adopted the "market rate" approach have applied a "creditor specific" variation, imposing a profit component as an element of the interest to be paid to the secured party. *See General Motors Acceptance Corp. v. Jones (In re Jones)*, 999 F.2d 63, 69–71 (3d Cir. 1993). Under the so-called "coerced loan" theory, courts attempt to put the secured creditor in the same position it would have been in if it had been allowed to end the lending relationship and make new loans to other consumers. *Id.* Similarly, some courts have suggested that the § 1325(a)(5)(B) interest rate should be based on the rate at which the secured creditor borrows money, because this approach compensates the secured creditor for its inability to make loans to other consumers. *See In re Fowler*, 903 F.2d 694, 697–98 (9th Cir.1990). However, in another refinement of the "creditor specific" approach, the Court of Appeals for the Fourth Circuit has excluded from consideration the lender's costs of capital and maintaining the lending relationship. *See United Carolina Bank v. Hall*, 993 F.2d 1126, 1130–31 (4th Cir.1993).

The Court of Appeals for the Third Circuit and several other courts have held that the original contract rate of interest must be used in a cramdown plan to comply with § 1325(a)(5)(B). *See In re Jones*, 999 F.2d at 71 (original contract rate is presumed appropriate, subject to rebuttal); *In re Chapman*, 135 B.R. 11 (Bankr.M.D.Pa.1990); *In re Frey*, 34 B.R. 607 (Bankr.M.D.Pa.1983). Many courts reject this approach as providing a windfall to the secured creditor. *See United Carolina Bank v. Hall*, 993 F.2d at 1131.

Another approach is the so-called "T–Bill" approach. Courts adopting this approach use the interest rate established by the sale of United States Treasury bills, or a variation thereof, such as the T-bill rate plus an upward adjustment, which they view as a risk-free rate that furthers a debtor's fresh start. *See, e.g., In re Ivey*, 147 B.R. 109 (M.D.N.C.

---

2. This requirement is different from the allowance of postpetition interest as part of an oversecured creditor's claim, *see* 11 U.S.C. § 506(b), or an undersecured creditor's entitlement to adequate protection payments, *see* 11 U.S.C. §§ 361, 363.

1992); *In re Frost,* 47 B.R. 961 (D.Kan.1985); *In re Mitchell,* 77 B.R. 524 (Bankr.E.D.Pa. 1987).

Some courts have utilized yet another approach, applying the prime rate, that is the rate charged by commercial banks to prime commercial loan customers, to determine the appropriate rate under § 1325(a)(5)(B). *See In re Jordan,* 130 B.R. 185 (Bankr.D.N.J. 1991) (the discount rate for § 1325(a)(5)(B) purposes is the market rate; the prime rate is rebuttably presumed to be the best indicator of the market rate). Finally, a few courts have used the post-judgment interest rates established by state or federal law. *See In re Johnston,* 44 B.R. 667 (Bankr.W.D.Mo. 1984).

The approaches using the contract rate, the straight market rate, the creditor-specific/market rate, the T-bill rate, the prime rate, and the judgment rate all have disadvantages that may yield unfair results to either the debtor, the secured creditor, or the unsecured creditors, depending on the particular circumstances of the case. According to Judge Lundin, each of these approaches has its shortcomings. They fail to take into account that there are numerous different markets that may be relevant to the determination, as well as other factors, including the risk of a debtor's subsequent default, the length of the payment period, and the quality and nature of the collateral. The contract rate approach ignores the status of the modification as a new loan and may bear no relation to the current marketplace. The creditor specific approach presents unmanageable problems of application as the rate depends on each lender's condition. The straight market rate, T-bill rate, the prime rate, and the judgment rate approaches do not take into consideration both 1) the risk factors that a lender faces in making what in many situations is a forced loan to a debtor with a history of defaults; and 2) the terms of the proposed repayment plan. *See generally, Lundin,* ¶ 5.51 at 5–143–150.

In light of these problems, how should the Court establish the amount of interest that a debtor must pay under a Chapter 13 cramdown plan? As Judge Lundin has noted, some courts, "in the search for certainty,"

have established absolute directives, through either case law or local rule, to determine the discount rate under § 1325(a)(5)(B). *Lundin,* ¶ 5.51 at 5–145. *See, e.g., In re Wilmsmeyer,* 171 B.R. 61, 64 (Bankr.E.D.Mo.1994) (local rule requiring interest to be paid at prime rate plus 3½%); *In re Harris,* 167 B.R. 813 (Bankr.D.S.C.1994) (court-sanctioned committee set discount rate on annual basis); *In re Smith,* 42 B.R. 198 (Bankr.N.D.Ga. 1984).

This Court shall not apply a single litmus test to determine the proper interest rate for Chapter 13 cramdown plans. It is inappropriate for a court or a district to precisely fix, in advance, by case law or local rule, a rate of interest for all the Chapter 13 cramdown plans pending before it. Although the predictability of a policy that sets the rate by local rule or committee has the advantages of certainty and cost-effectiveness, the inflexibility inherent in such a broad brush determination is analogous to an irrebuttable presumption that violates basic principles of due process. Market rates of interest vary from day to day and the particular facts of each case vary with each debtor that comes before the Court. A case-by-case approach, in this Court's view, is the only fair and equitable way to proceed.

This Court's approach is predicated upon a two step process. First, the Court shall determine the market rate of interest for similar loans in the marketplace in the region. Secondly, after determining the market rate, the Court shall then determine whether an upward adjustment of this base rate is warranted in the particular case, through the introduction of competent evidence or the parties' stipulation with respect to the following non-exhaustive list of factors: the type and the value of the collateral; the length and terms of the modified loan; the debtor's financial history, both in general, and with the particular lender; the lender's risk factors in extending the forced credit; the lender's lost opportunity costs and expenses; and any extenuating circumstances of the debtor, such as the debtor's net disposable income, the reasons for the debtor's financial trouble, and the other provisions of the debtor's reorganization plan. Under this

"market rate plus" approach, the Court will be able to respond to the changing market, and balance the competing interests of the secured creditor and the debtor.

■ In the absence of an agreement as to the appropriate rate of interest, the parties must be prepared to introduce expert testimony or other admissible evidence to prove the prevailing market rate of interest for similar loans, as well as evidence on the other factors set forth above. However, debtors shall have the ultimate burden of showing that their plans contain the appropriate rate of interest under § 1325(a)(5)(B), *see Barnes*, 32 F.3d at 407. In light of the "market rate plus" standard just articulated, the Court anticipates that, in the vast majority of cases, the parties will be able to agree upon the appropriate rate of interest to be applied to a cramdown plan either at the § 341 meeting, in the context of § 1322(b)(2) and § 506 Motions, or prior to the hearing on the secured creditor's objection to confirmation of the plan. An analysis of the factors identified above is not so difficult or onerous as to require court intervention in anything but the most unusual case. Moreover, the cost of litigating the appropriate interest rate may be prohibitively expensive for most Chapter 13 debtors and is inconsistent with the expeditious administration of Chapter 13 cases. Finally, implicit in the determination of the proper rate is the rehabilitative intent of Chapter 13.

With respect to the instant dispute, even if the Court considers the Debtors' informal proposal set forth in their brief to pay 5.5 percent interest per year on the allowed amount of FNMA's secured claim to be a formal amendment to their Plan, the Debtors' Plan fails to meet the requirements of § 1325(a)(5)(B). The Debtors have failed to make any showing with respect to the first level of the inquiry, namely, that 5.5 percent is the prevailing market rate for similar loans.

## IV. CONCLUSION

In accordance with the foregoing rulings, the Court grants the Debtors' Motion to Modify, approves the stipulation between the Debtors and FNMA concerning the § 506

Motion, sustains FNMA's objection to confirmation of the Debtors' Plan, and denies confirmation of the Debtors' Chapter 13 Plan, without prejudice to the filing of an Amended Plan providing for an appropriate rate of interest under 11 U.S.C. § 1325(a)(5)(B). The Debtors shall file an Amended Plan within 15 days from the date of the Order that accompanies this Memorandum. In the absence of an agreed upon rate of interest, FNMA shall file any objection to the Debtors' Amended Plan within 15 days after service on FNMA's counsel, and the Court shall schedule a hearing on any objection.