Chandra Moy CHANG, Debtor.

No. 97–47803–JBR.

United States Bankruptcy Court,
D. Massachusetts.

March 1, 2002.

298

Chandra Moy Chang, Chapter 13 Debtor, Pro Se.

Joanne Psilos, Worcester, MA, for Denise M. Pappalardo, Chapter 13 Trustee.

Paul W. Carey, Mirick O'Connell DeMallie & Lougee, LLP, Worcester, MA, for Pinellas County Tax Collector.

## MEMORANDUM OF DECISION

JOEL B. ROSENTHAL, Bankruptcy Judge.

This case presents problems of the Debtor's making as she attempts to traverse her own course through Chapter 13 beginning with an incomplete creditor matrix and including a confirmed plan which was not served on all of the creditors, if indeed it was even served at all, and inconsistent statements of the Debtor. The Court only first became aware of these problems when the Debtor sought to amend a confirmed plan to include postpetition unpaid taxes. That motion, in turn, focused the parties on the issue of entitlement to interest on the taxes already included in the plan, and led to this Court's review of all the pleadings filed in this case.

The parties have filed numerous pleadings and the Court has held extensive oral argument.[1] Most of the salient facts, however, are not in dispute. To the extent the Debtor has made contrary, and sometimes contradictory, statements at some of the hearings, including statements about notice to creditors-the source of the problem of this case, her allegations are either not supported by the record or, in fact, are directly controverted by her own pleadings, or lack thereof.

## BACKGROUND

On November 6, 1997 Chandra Moy Chang, the *pro se* debtor (the "Debtor"), filed her Chapter 13 petition along with a creditor matrix.[2] Pinellas County is not listed on the original matrix but the Debtor acknowledges that she owes or owed *ad valorem* taxes[3] on income property in Florida. Although the Debtor's schedules are replete with inconsistencies,[4] there is

1. The pleadings include the Debtor's Motions to Amend Post Confirmation Chapter 13 Plan [# 40 and 45] and the Objection of the Tax Collector for Pinellas County, Florida to said Motion [# 46], and Motion of the Tax Collector of Pinellas County, Florida to Dismiss Confirmed Chapter 13 Case [# 46] and the Debtor's Objection thereto [# 49]. In addition the Debtor filed a Motion to Allow Tax Collector, Pinellas County, to Apply Partial Payment [sic] As It Is Received [# 55]. Following the first hearing the Debtor filed an additional Motion to Amend Post Confirmation Amended Chapter 13 Plan [# 68] (there is no confirmed Amended Plan in this case), which in reality provided the Court with three different plans from which to chose, and to which both the Chapter 13 Trustee and Pinellas County objected [# 69 and # 70, respectively]. In addition the Debtor filed several additional pleadings including a response to the objections to her plan proposals, a "clarification" and a brief. The Court held a further hearing on the merits of all the pleadings filed.

2. The Debtor previously filed a Chapter 13 proceeding *pro se* in June 1993. Although a plan was eventually confirmed, the case was dismissed upon the motion of the Chapter 13

Trustee approximately 15 months after it was filed.

3. " '*Ad valorem* tax' means a tax based on the assessed value of property. The term 'property tax' may be used interchangeably with the term '*ad valorem* tax.' " Fla. Stat. 192.001(1).

4. Schedule A reveals that the Debtor owns what she describes as a "leasehold" interest, which she values at $100,000, in land in St. Petersburg Beach, Florida on which a single family house is located. Schedule H lists Helen Strome as the owner of the St. Petersburg land in which the Debtor claims a 30-year land lease and the Debtor as the owner of the single family house located on Ms. Strome's land. The Debtor has never disputed that she is responsible for the taxes at issue.

Schedule A also indicates that the Debtor's interest in the Florida real estate is encumbered by a mortgage in the amount of $104,400 held by the Debtor's mother. Yet the proof of claim filed by the Debtor's mother and the mortgage attached thereto evidences that the mortgage is *not* secured by the Florida property but rather by the Debtor's Massachusetts residence, property not even listed as owned by the Debtor on Sched-

no dispute that Pinellas County holds an oversecured involuntary lien on the Debtor's property located in Pinellas County, Florida pursuant to Florida law.[5]

On November 20, 1997 the Debtor filed a plan (the "Original Plan"). The Original Plan proposed to pay Pinellas County $125 per month for 60 months for a total of $7,500, the face amount of the scheduled claim. The Original Plan does not provide for the payment of interest on the taxes. There is nothing, however, that demonstrates that the Debtor served the Original Plan on Pinellas County. Indeed there is no certificate of service for the Original Plan in the file or reflected on the docket. Moreover, in late December 1997, when the Clerk's Office of the Bankruptcy Court mailed the Notice of Commencement of the Case to the creditors on the creditor matrix, Pinellas County was not listed on the matrix. Thus the Clerk's Office did not serve the County with the Notice.

On March 26, 1998 the Original Plan, as modified,[6] was confirmed. The County contends that it had no prior notice of the confirmation hearing but none of its pleadings or statements of counsel indicate whether it had knowledge of the bankruptcy and the plan prior to the confirmation hearing. Although the Debtor made a single statement at one of the hearings that her creditors got notice, she has not offered any evidence to support this statement. Indeed the record, lacking a certificate of service for the Original Plan and containing an incomplete creditor matrix, supports a contrary finding: the County did not get proper notice of the Original Plan and confirmation hearing.

Pinellas County filed a proof of claim for the tax year 1997 on April 15, 1998—one day before the bar date for filing claims in this matter. In its proof of claim Pinellas County asserted a secured claim of $2,513.81 plus interest of $37.71 per month.[7] This interest figure is based on

ule A, where the Debtor lives with her husband who is not a debtor in this proceeding. Schedule A also indicates that the Florida property is encumbered with a $7,500 "county tax lien" but in Schedule E the Debtor listed Pinellas County as holding a $7,500 priority claim relating to unpaid taxes for the years 1995 through 1997.

5. Fla. Stat. 197.122(1) provides in relevant part:

All taxes imposed pursuant to the State Constitution and laws of this state shall be a first lien, superior to all other liens, on any property against which the taxes have been assessed and shall continue in full force from January 1 of the year that taxes were levied until discharged by payment....

6. The modification was solely to recalculate the amount of the Debtor's monthly payment and does not affect the treatment Pinellas County received under the Original Plan. It should be noted, however, that the modification is dated January 16, 1998, the date of the first meeting of the Debtor's creditors pursuant to Section 361 of the Bankruptcy Code.

The examination and modification have apparently created some confusion for the Debtor who frequently refers to January 15, 1998[sic] as the date of confirmation of the Original Plan. *Compare, e.g.* Motion to Amend Post Confirmation Chapter 13 Plan [# 68] and Debtor's Response to Chapter 13 Trustee's objection to Debtor's Motion to Amend Post Confirmation Chapter 13 Plan [# 71] (both stating that confirmation date was January 15, 1998) and *with* Debtor's Objection to Motion to Dismiss Confirmed Chapter 13 Plan by Tax Collector, Pinellas County [# 49] (correctly referring to the confirmation date as March 26, 1998).

7. The discrepancy between the amount scheduled by the Debtor and the amount claimed by the County is the result of the sale of tax certificates for the 1995 and 1996 taxes. When the County filed its proof of claim, it also filed a Notice of Transfer of Claims identifying the purchasers of the tax certificates. The treatment of the holders of the tax certificates, who are receiving direct payments from the Chapter 13 Trustee, is not presently before this Court.

the rate of 18% per annum. Following confirmation the Debtor filed several claims objections. She did not object to the claim of Pinellas County.

The County acknowledges it received the first check from the Chapter 13 Trustee, who was making distributions in accordance with the Original Plan, in April, 1998. The County did not apply said payments to its claim but held those payments in a suspense account and continued to add interest at the statutory delinquency rate to the 1997 tax obligation.

In June 2001 the pitfalls into which this *pro se* Debtor stumbled came to light when she filed a motion to amend her confirmed Original Plan, as modified, along with a proposed First Amended Plan. Before the time to object to the proposed First Amended Plan had expired, the Debtor filed a second motion to amend the confirmed Original Plan, as modified, along with a proposed Second Amended Plan. Both the First and Second Amended Plans were proposed in an attempt to cure post confirmation taxes owed on the Florida property.[8] Although neither plan met the requirements for confirmation, these pleadings, however, spurred the parties to action and crystallized the issues now before the Court.[9]

There are several issues which the parties have raised including, the appropriate rate of interest to be applied to Pinellas County's claim prepetition; whether Pinellas County is entitled to postpetition interest and if so, at what rate; and whether this Debtor may amend her plan to cure postpetition tax arrearage. Because many of these issues evaporate if the Original Plan, which does not provide for interest on the County's claim is binding on Pinellas County, the Court first needs to address the effect of the confirmation order.

### *RES JUDICATA*

 Ordinarily principles of *res judicata* prevent a subsequent attack on the confirmation of a plan. 11 U.S.C. § 1327(a).[10] Indeed, the policy favoring the finality of a confirmation order is so strong that a "creditor may not ignore the confirmation process and fail to object [to the amount or classification of his claim] simply because the bar date for filing a proof of claim has yet to expire." *Factors Funding Co. v. Fili (In re Fili)*, 257 B.R. 370, 373 (1st Cir. BAP 2001).[11] If he does

---

8. The Debtor has had some difficulty meeting her postpetition obligations. For example, on October 6, 2000 the Chapter 13 Trustee filed a Motion to Dismiss because the Debtor had failed to make 7 plan payments totaling $4,193. By the time of the hearing on the Motion to Dismiss, the Debtor had cured a portion of the arrearage and she and the Chapter 13 Trustee agreed to terms to allow the Debtor to cure the remaining arrearage. Prior to the October 2, 2001 hearing, the Debtor had again fallen three months behind in her plan payments. She has apparently cured the arrears as the Chapter 13 Trustee has not sought dismissal for failure to make plan payments.

9. The Debtor has since filed another motion to amend the confirmed plan to which she attached three proposed plans, each based on a different rate of interest to be paid in con-

nection with the tax claims. Both the Chapter 13 Trustee and Pinellas County have objected to that motion.

10. Section 1327(a) provides:

> The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan and whether or not such creditor has objected to, has accepted, or has rejected the plan.

11. Given that the facts in the instant case warrant a conclusion that Pinellas County is not bound by the terms of Original Plan, it is not necessary for the Court to address the precedential value of a bankruptcy appellate panel decision, *see generally* The Honorable Henry J. Boroff, *The Precedential Effect of Bankruptcy Appellate Panel Decisions*, 103

so, his later-filed claim is barred by the confirmation order. *Id.* As the *Fili* court noted, however, in order for a debtor to bind his creditors to the terms of the confirmed plan, he must provide "a procedurally proper and plain notice that its interests are in jeopardy. . . ." *Id.* Provisions of confirmed Chapter 13 plan are not binding on creditors to extent that the confirmation order was entered in violation of those creditors' due process rights. *Piedmont Trust Bank v. Linkous (In re Linkous)*, 990 F.2d 160, 162 (4th Cir.1993) (secured creditor not bound where the notice was insufficient to inform that confirmation hearing would also deal with the valuation and bifurcation of claim). *See also In re Walsh*, 264 B.R. 482, 483–84 (Bankr.N.D.Ohio 2001) (confirmed plan which did not provide for interest on tax claims not binding on tax certificate holders who did not get notice of the plan until after confirmation).

In the instant case the Debtor failed to provide Pinellas County with timely notice of the Original Plan. By doing so she prevented the County from objecting to confirmation of the Original Plan in a timely fashion.

Moreover, the Debtor's argument that it is too late for the County to object to the Original Plan pursuant to 11 U.S.C.

§ 1330 [12] is misplaced. Although the County could have challenged the confirmation order pursuant to Section 1330 or Rule 9024 [13] which incorporates the 180 day time limit of Section 1330, it did not. The Debtor, however, created the dilemma. To penalize Pinellas County for failing to complain earlier about its lack of notice does not correct the underlying problem. The County need not seek revocation of the confirmation order for the simple reason that it is not bound by it. To hold otherwise would violate an elementary and fundamental requirement of due process.[14]

## PREPETITION INTEREST

Generally a creditor is entitled to interest on its claim until the filing of a bankruptcy petition and the rate of the prepetition interest is that which is provided for under the applicable agreement or nonbankruptcy law. *United States v. Robinson (In re D.C. Sullivan & Company)*, 929 F.2d 1, 2 (1st Cir.1991). Therefore Pinellas County is entitled to calculate interest on the claim up to the date of the filing in accordance with applicable Florida law which, in the case of delinquent taxes, mandates a rate of 18%. Fla. Stat. 197.172. The Debtor, however, disputes

---

Comm. L.J. 212 (1998), or whether, prior to *Fili*, a creditor with notice of a plan that improperly quantified or treated his claim could have relied upon his proof of claim and the claims objection process to circumvent the confirmation process.

12. Section 1330(a) provides:
On request of a party in interest at any time within 180 days after the date of the entry of an order of confirmation under section 1325 of this title, and after notice and a hearing, the court may revoke such order if such order was procured by fraud.

13. Rule 9024 does not limit revocation of confirmation orders to those "procured by fraud" as does Section 1330(a). Instead it

incorporates Fed.R.Civ.P. 60, albeit subject to the 180–day limit of Section 1330(a).

14. The Court need not engage in a lengthy discourse regarding the County's right to procedural due process if it is not a "person" within the meaning of the Fifth Amendment to the United States Constitution. *See City of Sault Ste. Marie v. Andrus*, 532 F.Supp. 157 (D.D.C.1980). The Bankruptcy Code and Rules mandate notice to all creditors prior to confirmation of a plan if they are to be bound by it. *See* 11 U.S.C. § 1324; Fed. R. Bankr.P. 2002.

that the rate is 18% and argues that either the taxes were not delinquent on the petition date ·and therefore the rate is a maximum of 3%, or that either the County is not entitled to any interest because none is provided for in the Original Plan.

Because of the procedural infirmities of this case, it is distinguishable from *Fili* where a proof of claim was trumped by the order confirming the plan of which the creditor had notice. This Court will give Pinellas County's proof of claim the validity to which it is entitled, 11 U.S.C. § 502(a); Fed. R. Bankr.P. 3001(f), and accordingly finds that as of the petition date, the claim of Pinellas County was $2,513.81. To do otherwise would allow the Debtor to essentially bind the County to the Original Plan despite her own failure to give this creditor proper notice.

## POSTPETITION INTEREST

■ An oversecured claim that will be paid over time under a confirmed plan actually gives rise to two separate postpetition interest periods. The first period runs from the petition date to generally either confirmation or the effective date of the plan pursuant to section 506(b).[15] *Key Bank of New York v. Harko (In re Harko)*, 211 B.R. 116, 119, (2d Cir. BAP 1997), *aff'd sub nom. Key Bank National Association v. Milham (In re Milham)*, 141 F.3d 420 (2d Cir.), *cert. denied* 525 U.S. 872, 119 S.Ct. 169, 142 L.Ed.2d 138 (1998). The oversecured claim, including the interest awarded under section 506(b), becomes the actual bankruptcy claim that is due and owing at confirmation. It is the sum of the claim at the petition date plus interest awarded pursuant to section 506(b) on which the post confirmation interest is paid. *Id.*

The second interest period commences on confirmation or the effective date and runs until the last payment of the claim. The latter interest is the so-called "cramdown" interest. This interest derives from section 1325(a)(5)(B) of the Bankruptcy Code.[16]

Because Pinellas County is not bound by the Original Plan, it argues it is entitled to 18% interest on its claim and urges the Court to permit interest to run at 18% until at least confirmation and preferably until confirmation of any amended plan. Because, as an oversecured creditor the County is entitled to both Section 506(b) interest and Section 1325(a)(5)(B) interest, the Court must decide what the appropriate rate of interest for each period should be and the time during which each applies.

### SECTION 506(b) INTEREST

■ A creditor is entitled to postpetition interest on his oversecured claim whether the lien arose voluntarily, or as in this case, by operation of law. 11 U.S.C. § 506(b); *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240, 109 S.Ct. 1026, 1029, 103 L.Ed.2d 290 (1989). Although the Bankruptcy Code does not delineate the period to which Section 506(b)interest applies, it has been general-

---

**15.** 11 U.S.C. § 506(b) provides:
To the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for in the agreement under which such claim arose.

**16.** Section 1325(a)(5) provides:
with respect to each allowed secured claim provided for by the plan—
(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim....

ly recognized that Section 506(b) only applies to the postpetition, preconfirmation period. 2 Keith M. Lundin, Chapter 13 Bankruptcy § 116.1 at 116–2 (3d Ed.2000) (hereinafter "Lundin"). Moreover Section 506(b) does not proscribe the rate of interest to be applied during this period. *Id. See also In re DeMaggio,* 175 B.R. 144, 147 (Bankr.D.N.H.1994). Instead the Court must determine the rate in light of the equities of each case although, as at least one commentator has noted, many cases adopt the contract rate. 2 Lundin § 116.1 at 116–5.

■■■■■ State statutes setting rates on delinquent taxes frequently use rather high interest rates and it is not surprising that some courts have rejected those rates. In *Wasserman v. City of Cambridge,* 151 B.R. 4 (D.Mass.1993), the district court held that, in light of the particular facts of the case, the municipal creditor was entitled to section 506(b) interest on its oversecured claim at the federal judgment rate in effect as of the petition date rather than the Massachusetts statutory rate of 16%. *Id.* at 5–6 and n. 2. The court found that unsecured creditors would be directly and adversely effected by the use of the much higher statutory rate as there was insufficient funds to pay the unsecured creditors in full. The court reasoned that using the federal judgment interest rate treats all interests more fairly; it provides the oversecured creditor with interest that more closely reflects market rates in effect at the time of filing and furthers the policy of providing a debtor with a fresh start. But as the *Wasserman* court noted, the rate to be applied must be determined on a case by case basis. *Compare DeMaggio,* 175 B.R. at 152 (oversecured tax lienholder was entitled to interest at the federal judgment rate rather than 18% rate set by

New Hampshire law); *In re Koger Properties, Inc.,* 172 B.R. 351 (rejecting 18% Florida statutory rate as in the nature of a penalty); *with In re Marfin Ready Mix Corp.,* 220 B.R. 148, 155–56 (Bankr. E.D.N.Y.1998) (18% delinquency rate applied); *In re Liuzzo,* 204 B.R. 235, 240 (Bankr.N.D.Fla.1996) (18% Florida statutory rate applied).

The same factors present in *Wasserman* are absent in this case and thus there is no justification for reducing the rate of tax to be paid to Pinellas County during the postpetition, preconfirmation period. First, if the period is deemed to run until the actual confirmation date of the Original Plan, that period is less than five months. Second, the amount of the County's claim is so small that interest accruing during this period is *de minimis.* Third, as the Debtor noted, one of her largest creditors, BankBoston, did not file a claim in this case.[17] Money she intended to commit to the bank's dividend is available to pay Pinellas County. Her proposed dividend of 10% to unsecured creditors is not affected by using the Florida statutory rate.

Further the Court concludes that interest during the Section 506(b) period should run until the date of entry of the confirmation order. Therefore Pinellas County is entitled to interest at 18%, which is $179.12, for this period. Thus the amount of the County's claim to which the cramdown rate of interest, as discussed below, is $2,692.32. This puts the County in the same position it would have been in had it received notice of the Original Plan and objected to its confirmation.

■■■■■ Finally, at the most recent argument, the County, for the first time, asserted that it was entitled to costs, including attorneys' fees, in connection with

---

**17.** The Court makes no finding as to whether the bank was properly served with pleadings in this case so that its claim against the Debtor have been lost.

its secured claim under Section 506(b) because of the *Ron Pair* decision. This position is incorrect, however. The plain language of section 506(b) is clear. While a holder of oversecured claim is entitled to interest without regard to whether the claim arose by agreement or operation of law, only a holder of an oversecured claim that arose under an agreement that provides for fees, costs, and other charges, is entitled to the same. That Florida law may provide for the collection of costs, including attorneys' fees, as part of the collection of delinquent taxes is irrelevant in a bankruptcy. A state statute is not an agreement contemplated by the language of Section 506(b). *Ron Pair*, 489 U.S. at 241, 109 S.Ct. at 1030 ("Recovery of postpetition interest is unqualified. Recovery of fees, costs, and charges, however, is allowed only if they are reasonable and provided for in the agreement under which the claim arose. Therefore, in the absence of an agreement, postpetition interest is the only added recovery available.")

## SECTION 1325(a)(5)(B) INTEREST

Section 1325(a)(5)(B) permits a "cramdown" only if the creditor to be crammed receives future payments, the present value of which is at least equal to the amount his secured claim at confirmation or, stated another way, the secured creditor is entitled to interest on his claim at a rate that will ensure that the sum of the payments received under a plan have a present value that is at least equal to what the creditor would receive if his claim were paid in full at confirmation. Courts, however, are not uniform in the methods employed to ensure that the rate of interest chosen is the appropriate one.

In *In re St. Cloud*, 209 B.R. 801 (Bankr.D.Mass.1997) and the earlier decision of *In re Galvao*, 183 B.R. 23 (Bankr.D.Mass.1995), Judge Feeney undertook a thorough review of the various approaches utilized by courts. There is no need to repeat those efforts. Furthermore, for the reasons stated in *St. Cloud*, this Court agrees that the approach that best ensures compliance with the requirement of Section 1325(a)(5)(b) is the "market rate plus" approach even in cases where the secured claim arises by operation of law instead of from a voluntary loan. That approach requires two determinations. First, a court must determine the base rate which is "the current market rate for a loan similar to the original loan between the Debtor and the secured party that is now available to a reliable borrower with a good credit rating as of the date of the confirmation." *Id.*, 209 B.R. at 808 (footnote omitted). "Next, the Court must determine what adjustments to the base rate are appropriate in light of the *Galvao* factors." *Id.* Those factors include "the type and value of the collateral, the terms of the plan, the debtor's financial history and prospects, the lender's risk factors and lost opportunity costs." *Id.*

In the instant case, the Court will take judicial notice that the annual rate of interest for a 30 year fixed rate mortgage at the time of confirmation of the Original Plan was 7.135%.[18] Given the Debtor's history of defaults, the Court finds the addition of 1% appropriate. No further additions to the rate should be made, however. The Debtor has nearly completed her plan payments and the amount remaining unpaid is minimal. Moreover the County holds a first lien that guarantees payment

---

**18.** This is the average of the 30–year fixed mortgage rates for the Federal Home Loan Mortgage Corp. (Freddie Mac) and the Feder-

al National Mortgage Association (Fannie Mae) as reported in the March 3, 1998 edition of the *Wall Street Journal*.

at some point. Thus the applicable cramdown rate is 8.135%.

## APPLICATION OF PAYMENTS

The Tax Collector argues that Florida law does not permit the application of partial payments to unpaid taxes. That Florida law may not provide for the application of partial payments is not relevant because the Bankruptcy Code does. The very essence of Chapter 13 is to permit repayment of debt over time. Therefore the Tax Collector is instructed to apply the payments as they were received to the 1997 tax claim.

## POST–CONFIRMATION DEFAULTS

The Debtor has failed to pay post 1997 taxes which are beyond the scope of the Original Plan. Now she seeks to wrap all those unpaid taxes into an amended plan.

A debtor may amend a plan post confirmation pursuant to 11 U.S.C. 1329.[19] It is not clear whether Section 1322(b)(5)[20] permits postpetition arrears to be included in an amended plan. *Anglin v. Regions Mortgage, Inc.(In re Anglin)*, BAP No. MW 00–055 (B.A.P. 1st Cir. March 26, 2001). As the *Anglin* court noted, however, assuming the right to cure postpetition arrearage is permitted under the Bankruptcy Code, "the opportunity is permissive, not vested." *Id.* at 6. Here the

Debtor has demonstrated that she is unable to meet her plan obligations on a consistent basis and, even with the benefit of this current proceeding, she has been unable to remain current on her obligations on a second home which, according to the Debtor's schedules, produces income. In addition the Debtor has stated that one of her creditors, BankBoston, intends to aggressively pursue her husband for liability on the joint debt. Thus whether some portion the husband's income will be available to help this Debtor fund an amended plan is unclear. The Court will not force the Debtor's creditors, especially an involuntary creditor such as Pinellas County, to shoulder the burden of property the Debtor may ill afford to own.

## CONCLUSION

The motion requiring the County to apply partial payments as received is allowed and the County is to file an amended accounting using the interest rates set forth herein and applying the payments made as of the date each payment was received. The motions to amend the confirmed plan are denied; the motions to dismiss are denied without prejudice. A separate order will issue.

---

**19.** 11 U.S.C.A. § 1329 provides:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

**20.** Section 1322(b) provides in relevant part:

Subject to subsections (a) and (c) of this section, the plan may . . .

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due. . . .